(March 8, 1902.)

## PIONEER IRRIGATION DISTRICT *v.* BRADLEY.

### [68 Pac. 295.]

CONSTITUTIONAL LAW—EACH ACT BUT ONE SUBJECT.—Under the provisions of section 16, article 3 of the constitution of Idaho, each act must embrace but one subject and matters properly connected therewith.

SAME—TWO DIVERSE SUBJECTS IN TITLE OF ACT.—Under said provision of the constitution if the title of an act indicates, and the act itself actually embraces, two or more subjects, diverse in their nature and having no necessary connection, such act is unconstitutional and void.

SAME—GENERALITY OF TITLE.—The generality of a title to a bill is no objection to it so long as it is not made a cover to legislation incongruous in itself, and by no fair intendment can be considered as having a necessary or proper connection with it.

PROVISIONS THAT MAY BE UNITED.—If the provisions of an act all relate directly or indirectly to the same subject, have a natural connection therewith, and are not foreign to the subject expressed in the title, they may be united in one·act.

Points decided.

CONFLICT MUST BE PALPABLE.—The objection should be grave, and the conflict between the constitution and statute palpable before the judiciary should hold a legislative enactment unconstitutional upon the sole ground that it embraces more than one subject.

NUMEROUS PROVISIONS OF SAME ACT.—However numerous the provisions of an act may be, if they can be, by fair intendment, considered as falling within the subject matter legislated upon in such act or necessary as ends and means to the attainment of such subject, the act will not be in conflict with said constitutional provision.

ENTIRE STATUTORY LAW UPON ONE GENERAL SUBJECT.—Said constitutional provision was not intended to prevent the incorporation into a single act of the entire statutory law upon one general subject.

CONSTITUTIONAL LAW—TITLE AND SUBJECT.—The following title held to contain but one general subject, and also held that the act treats of but one general subject. Said title is as follows: "To amend sections 2, 11, 22 and 26 of an act entitled 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes, and for other and similar purposes,' approved March 6, 1899; and to amend section 9 of chapter 1, and section 16 of chapter 2 of an act entitled 'An act to provide for a state engineer, defining his duties, and regulating his compensation, and to provide for the acceptance by the state of Idaho from the United States of certain lands; and to provide for the reclamation, occupation and disposal of the same,' approved March 2, 1899, and to provide for the acquisition of right of way for the construction of canals or reservoirs or other irrigation works over or upon the lands of the state of Idaho."

SAME—PROVISIONS GERMANE.—Held, that said act has but one general subject, object or purpose, and that is the reclamation and irrigation of desert or arid lands in the state, and that all of the provisions of said act are germane to that general subject and have a necessary connection therewith.

TWO ACTS MAY BE AMENDED BY ONE BILL.—If two separate bills are passed by the legislature on the same general subject, and with differently worded titles, said acts may be amended by one bill, with a proper title.

ASSESSMENTS ACCORDING TO BENEFITS.—DUE PROCESS OF LAW.—While the original district irrigation law provides for an assessment, by acreage, and fails to provide a means by which the benefits received may be adjudicated, the amendatory act fully

Argument for Appellant.

provides the method and means by which such benefits may be adjudicated, and is not in conflict with the provisions of the Fourteenth amendment to the constitution of the United States, which prohibits the taking of private property without due process of law under the guise of taxation or otherwise.

      ' (Syllabus by the court.)

APPEAL from District Court, Canyon County.

W. E. Borah and J. J. Blake, for Appellant.

If the title to an act actually indicates, and the act itself actually embraces, two different objects, when the constitution says it shall embrace but one, the whole act must be treated as void from the manifest impossibility in the court choosing between the two, and holding the act valid as to one and void as to the other. (Cooley's Constitutional Limitations, sec. 148, p. 178; *Antonio v. Gould,* 34 Tex. 49; *State v. McCracken,* 42 Tex. 383.) "The practice of bringing together into one bill subjects diverse in their nature and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits, was one both corruptive of the legislature and dangerous to the state." (Cooley's Constitutional Limitations, 172; *State v. Silver,* 9 Nev. 227; *People v. Mahaney,* 13 Mich. 481; *State v. Hallock,* 19 Nev. 384, 12 Pac. 834; *Stewart v. Father Matthew Society,* 41 Mich. 72, 1 N. W. 931; *Walker v. Caldwell,* 4 La. 297; *State v. Union,* 33 N. J. L. 352; *State v. Ransom,* 73 Mo. 78; *People v. Hills,* 35 N. Y. 452; *State v. Wright,* 14 Or. 365, 12 Pac. 708.) Almost any legitimate enterprise, whether it is a banking association or an irrigation association, is indirectly a benefit to the public, but this is not the sense in which the term is used in reference to taking private property for public use. (*Savings etc. Assn. v. Topeka,* 20 Wall. 455; *In re Pequest River,* 41 N. J. L. 175.) However salutary a law may be considered in its ultimate objects, unless in its enforcement there is a method provided for the assessment according to benefits, it cannot under our laws be considered as constitutional. Unless such a provision is made,

it will be considered as taking the property without due process of law. No rule of law is better established than that in making special assessments for any purpose, they must be according to benefits. (*Ashberry v. Roanoke* 91 Va. 562, 22 S. E. 360, 42 L. R. A. 636; *State v. Commissioners,* 38 N. J. L. 190, 20 Am. Rep. 380; *State v. Newark,* 27 N. J. L. 190; *Stuart v. Palmer,* 74 N. Y. 189, 30 Am. Rep. 289; *Hammett v. Philadelphia,* 65 Pa. St. 146, 3 Am. Rep. 615; *Detroit v. Chapin,* 112 Mich. 588, 71 N. W. 149, 42 L. R. A. 638; *Bogert v. City of Elizabeth,* 27 N. J. Eq. 568; *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. Rep. 187; *Lyon v. Towanda,* 98 Fed. 361; *Charles v. City,* 98 Fed. 166; *Wurts v. Hoagland,* 114 U. S. 613, 5 Sup. Ct. Rep. 1086.)

John C. Rice and J. M. Thompson, for Respondent.

The constitutional provision is that every act shall embrace but one subject and matters properly connected therewith. In similar provisions of the various state constitutions, the word "subject" is sometimes used, while the word "object" is used in other constitutions. (*Fahey v. State,* 27 Tex. App. 146, 11 Am. St. Rep. 182, 11 S. W. 108; *People v. Lawrence,* ·36 Barb. 192.) The purpose of this constitutional provision according to Judge Cooley is: 1. To prevent hodgepodge or "log-rolling" legislation; 2. To prevent surprise or fraud upon the legislature by means of provisions in bills of which the title gives no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and 3. To fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." (Cooley's Constitutional Limitations, 6th ed., 172.) Again, on the same page, Judge Cooley says: "The generality of a title is therefore no objection to it, so long that it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." (*Winters v. City of Duluth,*

82 Minn. 127, 84 N. W. 788; *State v. Cassidy,* 22 Minn. 324, 21 Am. Rep. 765; *Clare v. People,* 9 Colo. 122, 10 Pac. 799; *State v. Board of Commrs.,* 21 Nev. 235, 29 Pac. 974.) If the provisions of a statute all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title, it is permissible to unite them in the same act.' (*Inhabitants of Montclair v. Ramsdell,* 107 U. S. 147, 2 Sup. Ct. Rep. 391; *Lewis v. Dunne,* 134 Cal. 291, 86 Am. St. Rep. 257, 66 Pac. 478; *People v. Mullender,* 132 Cal. 217, 64 Pac. 299; *People v. Parks,* 58 Cal. 624; *Andrew v. Board of Commrs. of Ada County,* 7 Idaho, 453, 63 Pac. 592; *State v. Doherty,* 3 Idaho, 384, 29 Pac. 855; *Northern Counties Investment Trust v. Sears,* 30 Or. 388, 41 Pac. 931; *Commonwealth v. Brown,* 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110; *State v. County Judge of Davis County,* 2 Iowa, 281.) There are no incongruous matters brought together in the body of the act, or expressed in the title. All the subject matter of the act refers to the general subject of irrigation. The law accepting what is known as the "Carey Act" and the irrigation district act are but different methods of accomplishing the same end. (*Golden Canal Co. v. Bright,* 8 Colo. 144, 6 Pac. 142; *Clare v. People,* 9 Colo. 122, 10 Pac. 799.) In the following cases the irrigation district law of California, known as the "Wright Law," has been held to be constitutional by the supreme court of California and the supreme court of the United States: *Turlock Irr. Dist. v. Williams,* 76 Cal. 360, 18 Pac. 379; *Crall v. Poso Irr. Dist.,* 87 Cal. 140, 26 Pac. 797; *In re Madera Irr. Dist.,* 92 Cal. 296, 27 Am. St. Rep. 106, 28 Pac. 272, 675; *Board of Directors Irr. District v. Collins,* 46 Neb. 411, 64 N. W. 1086; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. Rep. 56; *Hager v. Reclamation Dist. No. 108,* 111 U. S. 701, 4 Sup. Ct. Rep. 663; *Davidson v. Board of Admrs. of New Orleans,* 96 U. S. 97; *In re Central Irr. Dist.,* 117 Cal. 382, 49 Pac. 354.) In the matter of an irrigation district, it is evident that all the direct benefits resulting from the construction of the works of the district accrue only to the lands situated within the district. There can be

no question of the apportionment of the benefits between the district and the general public. While in some instances it is difficult to determine whether the taxing power is used for the benefit of private instead of public objects, in this case it is clearly for a public purpose. (*Falbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. Rep. 56; *Central Irr. Dist. v. De Lappe,* 79 Cal. 351, 21 Pac. 825.)

SULLIVAN, J.—This action was commenced to obtain the confirmation of the district court of the third judicial district, in and for Canyon county, of the proceedings under and by which the respondent, the Pioneer Irrigation District, was organized, and the proceedings had and done by it relative to the assessment of the real estate within said irrigation district, and the issuance and sale of certain bonds of said district. The respondent district having filed its petition for said purpose in said court, the appellant, being a party in interest, appeared and demurred to said petition. Said demurrer put in issue the constitutionality of the statutes authorizing the organization of irrigation districts. It was overruled, and thereupon the appellant filed his answer putting in issue the material allegations of the petition. A trial was had upon the issues thus made, and the court entered an order and judgment confirming the incorporation of the respondent, thereby adjudging the same to be regular and valid, and all proceedings thereunder valid. During the progress of the trial, the appellant, by numerous objections, raised the question of the constitutionality of the original act and the act amendatory thereof, under which these proceedings were had. After judgment, the appellant made his motion for a new trial, which motion was overruled by the court, and this appeal is from said judgment and order. The questions presented for decision on this appeal involve the constitutionality of an act entitled: "An act to provide for a state engineer, defining his duties and regulating his compensation, and to provide for the acceptance by the state of Idaho from the United States of certain lands, and to provide for the reclamation, occupation and disposal of the same"

—approved March 2, 1899 (5th Sess. Laws, Pinney's ed., 444)
—and an act amendatory thereof entitled: "An act to amend
sections 2, 11, 22 and 26 of an act entitled 'An act to provide
for the organization and government of irrigation districts, and
to provide for the acquisition of water and other property, and
for the distribution of water thereby for irrigation purposes,
and for other similar purposes,' approved March 6, 1899;
and to amend section 9 of chapter 1, and section 16 of chapter
2 of an act entitled 'An act to provide for a state engineer de-
fining his duties; and regulating his compensation, and to pro-
vide for the acceptance by the state of Idaho from the United
States of certain lands; and to provide for the reclamation,
occupation and disposal of the same,' approved March 2, 1899,
and to provide for the acquisition of right of way for the con-
struction of canals or reservoirs or other irrigation works over
or upon the lands of the state of Idaho." (Sess. Laws 1901,
p. 191.)

The first contention is that said amendatory act clearly vio-
lates the provisions of section 16, article 3, of the constitution
of this state, which section is as follows: "Every act shall em-
brace but one subject and matters properly connected there-
with, which subject shall be expressed in the title; but if any
subject shall be embraced in an act which shall not be expressed
in the title, such act shall be void only as to so much thereof
as shall not be embraced in the title." It is contended that
said amendatory act embraces, at least, two separate and dis-
tinct subjects, and that said subjects have been individualized
by former acts of the legislature, to wit, the subject of the
formation of irrigation districts, and the subject of providing
for the acceptance, by the state, from the United States, of
certain public land, under what is popularly known as the
"Carey Act," and the compensation and duties of the state en-
gineer; and also the subject of providing for the right of way
for canals upon said and other lands; that said subjects are all
set forth in the title, and are all covered by the act, and that,
therefore, said entire act must fall, as it is not in the power of
the court to say which one of the subjects thus legislated on in

said act shall stand, or which shall fall. In support of the latter proposition, counsel cites, among other authorities, Cooley's Constitutional Limitations, page 178, section 148, where the author says: "If the title to the act actually indicates, and the act itself actually embraces, two different objects, when the constitution says it shall embrace but one, the whole act must be treated as void, from the manifest impossibility in the court choosing between the two, holding the act valid as to one, and void as to the other." And clearly, under the decided weight of authority, if said title contains two distinct subjects, and both of said subjects legislated upon in the body of said act, the act is absolutely void, as it is in contravention of said section of the constitution. The object and purpose of said constitutional provision is well understood. It was to prohibit the practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection; to prohibit "hodgepodge," or "log-rolling" legislation. (Cooley's Constitutional Limitations, 172.) It was to avoid improper influences which may result from an intermingling in one and the same bill such things as have no proper relation to each other. (*Walter v. Town of Union,* 33 N. J. L. 352.) In *State v. Ranson,* 73 Mo. 78, it is stated that said provision is to prevent conjoining, in the same bill, incongruous matter, and subjects having no legitimate connection, or relation to each other, and in no way germane to the subject expressed in the title. In commenting on the generality of the title to bills (Cooley's Constitutional Limitations, 6th ed., 172), the author says: "The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." In *Winters v. City of Duluth,* 82 Minn. 127, 84 N. W. 788, the supreme court of Minnesota, in commenting on a section of the constitution of that state which provides that "no law shall embrace more than one subject, which shall be expressed in the title," said: "It [said provision] was not intended to embarrass legislation by making laws more restrictive in their scope and operation than

is reasonably necessary in order to conserve the purpose for which the constitutional limitation was adopted; hence it must be liberally construed, and in a common-sense way"—and quotes as follows from *State v. Cassidy,* 22 Minn. 324, 21 Am. Rep. 765: "If the legislature is fairly apprised of the general character of an enactment, by the subject expressed in the title, and all its provisions have a just and proper reference thereto, and are such as, by the nature of the subject so indicated, are manifestly appropriate in that connection, and as might reasonably be looked for in a measure of such a character, the requirement of the constitution is complied with. It matters not that the act embraces technically more than one subject, one of which only is expressed in the title, so that they are not foreign and extraneous to each other, but blend together in the common purpose evidently sought to be accomplished by the law." In commenting upon a constitutional provision like the one here under consideration in *State v. Board of Commrs. of Humboldt County,* 21 Nev. 235, 29 Pac. 974, after reciting the purpose of said provision substantially as stated in Cooley's Constitutional Limitations, *supra,* the supreme court of Nevada said: "This then being the mischief against which this clause of the constitution is directed, it should be so construed as to correct the evil, but at the same time not to needlessly thwart honest efforts at legislation. There is scarcely any subject of legislation that cannot be divided and subdivided into various heads, each of which might be made the basis of a separate act, and in which the connection between them may be made a matter of controversy. . . . . If the provisions of a statute all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title, it is permissible to unite them in the same act. . . . . The objections should be grave, and the conflict between the constitution and statute palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraces more than one subject." And to the same effect is the decision in the case of *Montclair Tp. v. Ramsdell,* 107 U. S. 147 2 Sup. Ct. Rep. 391, 27 L. ed. 431. In

*People v. Parks,* 58 Cal. 624, it is said: "Provisions of an act
may be numerous; but however numerous, if they can be, by
fair intendment, considered as falling within the subject mat-
ter of legislation, or necessary as ends and means to the at-
tainment of the subject, the act will not conflict with the con-
stitution." This case is cited with approval and quoted from
in *People v. Mullender,* 132 Cal. 217, 64 Pac. 299. The su-
preme court of Oregon in *Investment Trust v. Sears,* 30 Or.
388, 41 Pac. 931, said: "We are required to look to the body
of the act, and the provisions therein contained for the ascer-
tainment of the subject matter. The title is of but little im-
portance, except to index and fairly indicate the subject of legis-
lation. Matters germane to or properly connected with the
subject, or matters of detail, have no place in the title, although
the circumstance of their being found there affords no consti-
tutional reason for rendering the act void or inoperative. . . . . '
The object of this clause of the constitution, so far as the ob-
jection here made to the act is concerned, is to prevent the
combining of incongruous matters, and objects totally dis-
tinct, and having no connection nor relation with each other."
In *State v. Doherty,* 3 Idaho, 384, 29 Pac. 855, this court said:
"Section 16, article 3, of the constitution, must be given a rea-
sonable construction. It is sufficient if the act treats of but
one general subject, and that subject expressed in the title."
In *Commonwealth v. Brown,* 91 Va. 762, 21 S. E. 357, 28 L.
R. A. 110, the court of appeals, in commenting on a provision
of the constitution of that state, like the one under considera-
tion, said: "And, on the other hand, it was not intended to ob-
struct honest legislation, or to prevent the incorporation into a
single act of the entire statutory law upon one general subject."
If the entire statutory law of this state upon the subject of ir-
rigation and the reclamation of arid land should be incorpo-
rated into a single act, it would contain, among other provi-
sions, every provision of the two acts, the constitutionality of
which is called in question on this appeal. As bearing upon
the point under consideration, see *State v. County Judge,* 2
Iowa, 281. Further citations might be made bearing upon this

point, as they are numerous, but we deem it unnecessary to make further citations.

We shall now proceed to apply the well-recognized rule, laid down by the above-cited authorities, applicable to said amendatory act, and ascertain whether it is clear and beyond a doubt that said act is obnoxious to said provision of our constitution, for, if there be a doubt as to the constitutionality of said act, it must be held valid. First, as to the title of said amendatory act: The first paragraph thereof is as follows: "An act to amend sections 2, 11, 22 and 26 of an act entitled, 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes, and for other and similar purposes,' approved March 6, 1899." This title is sufficiently comprehensive to authorize the amendment of said sections 2, 11, 22, and 26 of said original act, and comes clearly within the purview of the provision of said section of the constitution, so far, at least, as the amendment of said four sections is concerned. Section 2, as amended, prescribes the steps that must be taken in the organization of an irrigation district, and every provision of said section is germane to that subject. It prescribes the duties of the state engineer in the organization of an irrigation district as follows: "A copy of such map, estimate, and description of such boundaries shall be filed in the office of the state engineer at least sixty days before the date set for such hearing by the board of county commissioners. It shall be the duty of said state engineer to critically examine such map, estimate and description of said boundaries, and, if he shall deem necessary, to verify the same by a careful examination of the proposed district, and the site of the proposed works; and he shall prepare a report which shall discuss the water supply of the proposed district and the feasibility of the plans submitted for the reclamation of the lands thereof, and all other features pertaining to the irrigation of the proposed district. The state engineer shall submit said report to the board of county commissioners at the meeting set for the hearing of

said petition for organization. Whenever the state engineer shall, after having critically examined the plans of said petitioners and looked into all that pertains to the reclamation of the lands of the proposed district, report to the board of county commissioners against the organization of such district, said board of county commissioners shall refuse to further consider such petition; but when said engineer shall approve of such organization, said board of county commissioners may adjourn such hearing from time to time, not exceeding four weeks in all, and on the final hearing make such changes in the proposed boundaries as they may find proper and as are approved by the state engineer, and shall establish and define such boundaries." Sections 2, 3, and 4 of said act amend sections 11, 22, and 26 of the original act. It is not questioned but that each and every provision of sections 11, 22, and 26, as amended, are germane to the subject matter treated of, and are necessary ends and means to the attainment of the purpose of said act. The second clause of said title is as follows: "And to amend section 9 of chapter 1, and section 2 of an act entitled 'An act to provide for a state engineer, defining his duties and regulating his compensation, and to provide for the acceptance by the state of Idaho from the United States of certain lands; and to provide for the reclamation, occupation and disposal of the same,' approved March 2, 1899." Section 5 of said amendatory act amends section 9 of the original act, and is as follows: "The state engineer shall inspect, or cause to be inspected, as often as he thinks advisable, every dam or embankment used for holding water in this state, where the same is more than twenty feet in height; and if, after any such inspection, such dam or embankment, in the opinion of the state engineer, is unsafe, and the life or property liable to be endangered by reason thereof, he shall order the owner or owners to repair the same so as to make it safe; and if such owner or owners shall neglect or refuse to repair the same after a reasonable notice to that effect has been given in writing by the state engineer, the said state engineer shall report the facts in the case to the judge of the district court of the district in

which such dam or embankment is situated, who shall, after hearing such facts, if he deem it necessary for public welfare, order the water master of the district in which such dam or embankment is situated, if there be one, if not, the sheriff of the county to draw off such water from behind such dam or embankment, and to keep said water drawn off till such time as the orders of the state engineer shall be complied with; provided, that when great damage would result to those depending upon such dam or reservoir embankment for irrigation if such withdrawal of water were made, and when such impending danger to life and property can be prevented at reasonable expense without such withdrawal being first made, the state engineer shall make an estimate of the cost of such necessary repair and report the same to the district judge, who shall, if he deem it necessary for the public welfare, order the board of county commissioners of the county in which said works are situated to make, under the direction of the state engineer, such repairs as are recommended by said engineer, and to pay for the same by warrants drawn on the current expense fund of the county. The county auditor and recorder shall immediately present a bill of the amount of such expenses to the person or persons owning or controlling such dam or embankment, and unless the same is paid within three days from the presentation of said bill, or as much as shall not be so paid, shall thereafter become a lien upon the said dam or reservoir embankment and other irrigation works appurtenant thereto, which amount shall be added to the taxes against such property, and shall be collected in the manner provided by law for the collection of other taxes." Section 9 of the original act closes with the words "complied with," and the amendment consists of all that follows said words, and begins with the word "Provided." The amendment is contained wholly in the proviso. By the first clause of said amended section the state engineer is required to inspect, or cause to be inspected, every dam or embankment used for holding water in the state, where the same is more than twenty feet in height; and, if he is of the opinion that it is unsafe, he must order the owner or owners

to repair the same. While this provision of said section is sweeping, and apparently refers to all dams or embankments used for holding water in the state, whether for irrigation or other purposes, the subsequent provisions of said sections would indicate that the legislature had in mind only dams and embankments used to hold water for irrigation; for, if the owner neglects to repair an unsafe dam after the engineer has ordered him to do so, the engineer must report the fact to the district court of the irrigation district in which such dam is situated, who shall, after a hearing, if he deems it necessary for public welfare, order the water master of such irrigation district to draw off such water from behind such dam or embankment, and to keep said water drawn off till such time as the orders of the state engineer are complied with; and further on in said section the following language is used, "That when great damage would result to those depending upon such dam, reservoir or embankment for irrigation, if such withdrawal of water were made," etc. Taking all of the provisions of said section together, it is evident that the legislature, in enacting said section, had in mind dams and embankments used for storing waters for irrigation only, although the words used in the first provision of said section are sufficiently comprehensive to include all dams and embankments, whether used for storing water for irrigation or not. Section 6 of said amendatory act amends section 16 of said original act, and prescribes some of the duties of the state board of land commissioners immediately upon the withdrawal of any land for the state by the department of the interior of the United States, under and by virtue of the provisions of the act of Congress popularly known as the "Carey Act." Said section 16, as amended, is as follows: "Immediately upon the withdrawal of any land for the state by the department of the interior, and the inauguration of work by the contractor, it shall be the duty of the board, by publication once each week in some newspaper of the county in which said lands are situated, and one newspaper at the state capital for a period of four weeks, to give notice that said land, or any part thereof as the board in their discretion may

deem is for the best interest of the state, is open for settlement, the price for which said land will be sold to settlers by the state and the contract price at which settlers can purchase water rights or shares in such works." Section 7 of said amendatory act amends section 19 of said original act, and it refers to the construction of irrigation works for the irrigation and reclamation of the land received by the state under the provisions of said act of Congress, the duties of settlers thereon, the amount of land that each settler must cultivate and reclaim before making final proof therefor, the making of such final proof, and the steps necessary for the settler to take in order to procure a patent from the United States to the land settled upon. The last clause of said title is as follows: "And to provide for the acquisition of right of way for the construction of canals or reservoirs or other irrigation works over or upon the lands of the state of Idaho." And sections 8 and 9 of said act provide the method of procedure for obtaining rights of way for the construction of canals, reservoirs, and other irrigation works over and upon lands owned by the state, and come clearly within that subject, as stated in said subdivision 3 of said title.

It will be observed from the foregoing that all of the provisions of said act have but one general object, subject, or purpose, and that is the reclamation and irrigation of the desert or arid lands in the state. We do not think it will be seriously contended by any lawyer familiar with the irrigation laws of the state, and the amendatory act under consideration, that all of the provisions of said act are germane to the subject of reclamation and irrigation of the desert lands of the state; and if a complete codification of our laws touching upon that general subject were made, it must include each and every of the provisions of the amendatory act under consideration and above referred to. And, as stated in *Commonwealth v. Brown, supra,* the provision of the constitution under consideration was not intended "to prevent the incorporation into a single act the entire statutory law upon one general subject." The act in question does not attempt to do that.

Opinion of the Court.—Sullivan, J.

It does, however, amend certain sections of prior separate acts, which acts are not adverse to the general subject of irrigation, but are congruous, and germane to that subject, and have a necessary connection therewith. Judge Cooley, in speaking of the history and purpose of said constitutional provision, said, "They were to prevent the practice of bringing into one bill subjects diverse in their nature, and having no necessary connection." Every provision of said amendatory act referred to in regard to irrigation districts is connected with the subject of irrigation. The duties of the state engineer are almost, if not entirely, connected with the subject of irrigation; and the act, which provides for the acceptance, by the state of Idaho from the United States, of certain desert lands, and to provide for their reclamation, occupation, and disposal, is germane to and connected with the subject of irrigation and the reclamation of desert land; and the acquisition of rights of way over and upon state lands for the construction of canals, reservoirs, or other irrigation works is not diverse to the subject of irrigation, but necessarily connected with it. We therefore conclude that said act embraces but one subject, and matters properly connected therewith, and that said subject is sufficiently expressed in the title. It clearly shows that the subject of said act is the reclamation and irrigation of desert or arid land; and the language used in the title is sufficient to express that subject. The title of said act is more of an index of the general subject of irrigation than said provision of our constitution requires; and an act must not be held void for that reason.

It has been contended that the court has no authority to make a title to an act, and that is correct. In the case at bar, we do not make a title to the act under consideration, but hold that the title thereto contains but one general subject, and matters properly connected therewith, and that the act treats of but one general subject and matters properly connected therewith, and is a sufficient compliance with said provisions of the constitution.

It is suggested by counsel for appellant that, where matters have become the subject of legislation under distinct heads, and under separate and distinct acts, they are thereby made separate and distinct subjects, and that such acts cannot be amended by one bill, as that would be including two subjects under one title. The suggestion of counsel is correct if the subjects treated in the separate bills are incongruous and diverse to each other. If they are totally distinct, and have no connection nor relation with each other, they cannot be amended by one bill; but if they treat of matters that are germane to the same subject, and might properly have been enacted in one bill, under one title, and include but one general subject, they may be amended by one bill. Simply because the legislature has enacted laws on one general subject by separate and distinct bills does not prevent a subsequent legislature from combining such acts into one bill, or amend such separate acts by one bill with a proper title.

The next contention is that the original district irrigation act is unconstitutional, for the reason that it fails to require assessments to be made according to the benefits. Section 11 of the original act requires assessments to be made by acreage, and not according to the benefits; but that section has been amended by the amendatory act above referred to, and by its provisions directs that all assessments must be made according to the benefits accruing to each tract of land, and it is provided that the board of directors of each irrigation district "shall examine, critically, each tract or legal subdivision of land in said district with a view of determining the benefits which will accrue to each of such tracts or subdivisions from the construction or purchase of such irrigation works; and the cost of such work shall be apportioned or distributed over such tracts or subdivisions of land in proportion of the benefits accruing thereto; and the amount so apportioned or distributed to each of said tracts or subdivisions shall be and remain the basis for fixing the annual assessment levied against such tracts or subdivisions in carrying out the purpose of this act." Said section further provides that the proceedings

of such board in the matters just referred to must be reported to and submitted to the proper court, with the other proceedings in the organization of such district, for the court's confirmation, as provided in sections 16, 17, 18, 19, and 20 of said act. And, under the provisions of said sections, anyone owning land in such district may appear and show that "the cost of the irrigation works of such district has not been apportioned or distributed in proportion to the benefits accruing to any tract of land in said district." It may be that the section of the original act providing for assessments to pay the cost of constructing or purchasing irrigation works for a district was unconstitutional, in that it failed to require them to be made according to the benefits accruing to each tract of land; but the amendatory act clearly provides for assessments to be made according to the benefits accruing to each tract of land in such district, and the action of the board in preparing lists of all real estate in their district, by which the assessments each year shall be made, may be contested in the district court, on the ground that such lists are not made with reference to the benefits accruing to each tract of land. Said amendatory act provides, in terms, that such assessments must be made according to the benefits, and provides the procedure or method by which the benefits to each tract of land in any irrigation district may be ascertained and adjudicated. As that is done said law is not repugnant to the provisions of the fourteenth amendment of the federal constitution, prohibiting the taking of private property without due process of law under the guise of taxation. It is a well-recognized fact that the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry, but some reasonable means or method must be provided by which the question of benefits may be adjudicated; and the amendatory act, which takes the place of the original act under consideration, provides such means. It may be that in one district an assessment by acreage may be just, and according to the benefits, and in another not; and the law must provide some method whereby the taxpayer may have that ques-

tion adjudicated, if he wishes to do so, and in that regard the amendatory act is full and complete. That section of the original act, as amended, is not obnoxious to the fourteenth amendment to the constitution of the United States, as it does not provide for taking property without due process of law.

The judgment of the lower court must be affirmed, and it is so ordered. Costs are awarded to the respondent.

Stockslager, J., concurs.

QUARLES, C. J. (concurring in the conclusion, but dissenting from some of the views expressed).—I concur in the conclusion reached, and think that the judgment appealed from should be affirmed, not upon the ground upon which the majority opinion affirms it, but upon the ground that the proceedings in the matter of organizing the irrigation district in question substantially comply with the provisions of act of March 6, 1899, entitled "An act to provide for the organization and government of irrigation districts and to provide for the acquisition of water and other property and for the distribution of water thereby for irrigation purposes, and for other and similar purposes," found in acts of 1899, page 408. The suggestion in the majority opinion that that act is void, so far as the provisions thereof relate to taxation, to my mind, is incorrect. It is true that the assessment provided therein is to be made per acreage; but that does not preclude the assessment being on the principle of benefits received. The first proviso of the second section of said act (Laws 1899, p. 409) expressly provides that no "lands which will not, in the judgment of said board, be benefited by irrigation by said system be included within such district." It is difficult to conceive that one acre irrigated from the same system is benefited more than another acre irrigated therefrom. Under the said original act, hill land, and lands not susceptible of cultivation, are to be excluded from the district, and from taxation. This act is not open to the constitutional objection decided in *Village of Norwood v. Baker*, 172 U. S. 269, 19 Sup. Ct. Rep. 187, 43 L. ed. 443, so far as the provisions relating to assessments for

taxation are concerned.  Under the late decisions of the supreme court of the United States, the rule laid down in *Village of Norwood v. Baker, supra,* has been largely modified, if not overruled in effect, and under the decisions of that court the original act of March 6, 1899, *supra,* is not unconstitutional.  For the foregoing reasons, I am of the opinion that the judgment of the lower court should be affirmed.

It is impossible for me to give my assent to the conclusion reached by my associates that the amendatory act of March 18, 1901, the title to which is set forth in the majority opinion, and in the syllabus, is constitutional and valid, and does not contravene the provisions of section 16, article 3, of our state constitution.  This provision of the constitution not only provides that the title to an act shall express the subject thereof, but it provides that no act shall relate to more than one subject.  My associates very cleverly, ingeniously, and obligingly make a title for the said amendatory act, which is found in the body of the majority opinion, as follows, to wit, An act relating "to the reclamation and irrigation of desert or arid land."  Now, take the title to said amendatory act, and no such subject is expressed in the title.  Under the provisions of the constitution, the title is a part of the act, and is indispensable.  The subject must be expressed in the title. It need not be named in detail, and the title need not index the act.  But it must express the subject.  The purview of the act is limited, however, by the title, as all respectable authority holds.  If the title expresses a subject which is a branch of a general subject, the legislature is confined to that branch of the general subject named in the title, and cannot legislate upon other branches of the same general subject in the act.  In my opinion the general subject of the amendatory act under discussion, and which my associates hold to be "the reclamation and irrigation of desert or arid land," is not found in the title to said act.  It will be noted that the title consists of quoting titles to two former acts and adding some new matter.  The title of the first act amended expresses one subject relating solely to the organization, government, and

powers of irrigation districts. The general subject of reclaiming arid lands by irrigation is not mentioned in said title. There is nothing in the said title that shows that the legislature intended to enact rules for the irrigation of lands outside of irrigation districts. The purview of that act, as shown by the title, is limited to irrigation districts. So the general subject of "the reclamation and irrigation of desert or arid land" is not found in the title to the act of March 6, 1899, as set forth in the title to the amendatory act under consideration. Take the next subdivision of the title to this amendatory act, which is as follows: "And to amend section 9 of chapter 1 and section 16 of chapter 2 of an act entitled 'An act to provide for a state engineer, defining his duties, and regulating his compensation, and to provide for the acceptance by the state of Idaho from the United States of certain lands, and to provide for the reclamation, occupation and disposal of the same' "—and we nowhere find the general subject, "the reclamation and irrigation of desert or arid land," mentioned at all, except so far as it relates to the reclamation and irrigation—of what? The answer is palpable—the lands so accepted by the state of Idaho from the United States under the provisions of what is popularly known as the "Carey Act." It takes a vast stretch of the imagination of a trained lawyer to see any proper connection between the creation of irrigation districts and the act of the state in accepting the benefits of the Carey act, and a still greater stretch of imagination to see the proper connection between the creation of a state office and the acceptance of a donation to the state, or the creation out of certain territory of the state of a municipal corporation charged with governmental powers, including the power of taxation, like that of the Pioneer Irrigation District. This second subdivision expresses two distinct subjects of legislation, namely, the creation of an office and the acceptance of a conditional grant from the general government. There is no question but what the legislature could, under an act entitled "An act to create the office of state engineer," provide the duties of the office and fix the compensation of the incumbent

of such office; as those are matters that are properly connected with the subject of the act—the creation of the office. But I deny that any respectable authority can be found to the effect that, under the title of "An act to provide for a state engineer, defining his duties and regulating his compensation," the legislature can accept a grant of lands from the general government, and make regulations whereby such lands may be entered and reclaimed by private individuals. If these matters are not distinct, but properly connected, it is unnecessary to say anything about the acceptance of said grant, etc., in the title to the original act of March 2, 1899. Now, suppose that title had consisted of the following only, which is now a part of it, to wit, "An act to provide for a state engineer, defining his duties, and regulating his compensation," and the legislature had provided, as it did, in the body of the act, for the acceptance of lands from the United States government under the Carey act, and for the acquisition and reclamation of such lands by private individuals; would it be contended, even with the liberality of the majority, that such acceptance of land, and its acquisition and reclamation, has any proper connection with the creation of the office of state engineer? Is it necessary to have a state engineer in order to accept the benefits of the Carey act, or that we accept the benefits of the Carey act in order that we may have a state engineer? Where is any connection, proper or improper, between the acceptance of lands under the Carey act and the salary of the state engineer, or his duties with relation to the Pioneer Irrigation District? It may be obtuseness, but I am unable to see any connection between these matters. It is safe to say that no part of the lands embraced in the municipality defendant, the Pioneer Irrigation District, was acquired under or by reason of any provision in the Carey act. Take the remaining part of this remarkable title, viz., "and to provide for the acquisition of right of way for the construction of canals or reservoirs or other irrigation works over or upon the lands of the state of Idaho," and the general title which this court has manufactured, "the reclamation and ir-

rigation of desert or arid land," is not mentioned. And it is hard to conceive any proper connection between the other three subjects named in the title to this amendatory act—viz., the creation and government of irrigation districts, the creation of the office of state engineer, and the acceptance of a grant of lands by the state from the United States—and the granting of a right of way for canals over lands owned by the state. Now, if irrigation districts were confined to lands ceded to the state under the Carey act, and the duties of the state engineer were confined to irrigation districts, and the state owned no land except within organized irrigation districts, there would then be some slight grounds for contending that these subjects are connected; but, as it is, there is no ground whatever for such contention.

I have endeavored to show the error committed by my associates in making a subject for the title to the act under consideration, and to show that the four distinct subjects set forth in the title to the amendatory act under consideration have no proper connection, within the meaning and purview of the constitutional provision under consideration, without making this opinion too long, and have felt impelled to refrain from citing and commenting upon authority in the interest of brevity. The very wording of the constitution—"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title"—is sufficient, without citation of other authority, to show that the conclusions reached by my associates in regard to the act of March 18, 1901, and the title thereof, are erroneous. In my humble opinion this court has no power or authority to make a title for any legislative enactment, nor can it, by taking three branches of what might have been one general subject, put them together, and, by construction, make that general subject. Of course, it is disagreeable to have to decide that any act of the legislature is violative of our constitution; yet the duty of doing so, in the proper case, cannot be rightfully dodged. It is no discredit to the legislative department, or any member thereof, to hold that it has made a mistake. As a rule the

members are not lawyers, and not versed in the construction of constitutional provisions, and on this account mistakes are made, but we all owe our first duty to the constitution, and no department of government should take a step which, in effect at least, nullifies any of its provisions.