(No. 6560. August 30, 1938.)

STATE ex Rel. GUY GRAHAM, Commissioner of Agriculture of the State of Idaho, and HARRY E. YOUNG, L. R. HALVERSON, VICTOR SMITH, J. P. MARSHALL, GEORGE AMES, R. H. YOUNG and E. A. WHITE, Being and Constituting IDAHO FRUIT AND VEGETABLE ADVERTISING COMMISSION, Respondents, v. MYRTLE P. ENKING, State Treasurer of the State of Idaho, WILLIAM ROSE, G. W. BROWNING and J. K. KELLOGG, Appellants.

[82 Pac. (2d) 649.]

324

J. W. Taylor, Attorney General, and Lawrence B. Quinn, Assistant Attorney General, and Ariel L. Crowley, for Appellants.

Maurice H. Greene and George Donart, for Respondents.

HOLDEN, C. J.—This proceeding was commenced in the district court of Ada county by the petitioner, State of Idaho, on the relation of Guy Graham, as Commissioner of Agriculture, and the Idaho Fruit and Vegetable Advertising Commission, against Myrtle P. Enking, as state treasurer, to obtain a writ of mandate compelling the state treasurer to pay a certain warrant issued by the state auditor to George R. Ames.

The petition alleges: That Guy Graham is the duly appointed, qualified and acting commissioner of agriculture; that Harry E. Young, L. R. Halverson, Victor Smith, J. P. Marshall, George Ames, R. H. Young, and E. A. White are the duly appointed, qualified and acting Idaho Fruit and Vegetable Advertising Commission under the provisions of chapter 252, 1937 Session Laws; that Myrtle P. Enking is the duly elected, qualified and acting state treasurer and, as such, charged by law with the duty of paying warrants drawn by the state auditor, payable out of proper funds, lawfully presented to, approved and allowed by the board of examiners of the State of Idaho; that the twenty-fourth session of the state legislature duly and regularly passed an act known and described as House Bill No. 379, which

was approved by the Governor, March 17, 1937, and by its terms became effective upon such approval; that said act, now chapter 252, 1937 Session Laws, created in the office of the state treasurer a fund to be known and designated as the Idaho Fruit and Vegetable Advertising and Development Fund; that said act further appropriated the moneys in said fund for the purpose, among others, of the payment of compensation of the members of the commission for attendance at meetings of the commission, mileage allowance, and traveling expenses; that "there was and is a balance in said fund lawfully appropriated for said purpose to pay and satisfy the claim against said fund hereinafter referred to"; that November 29, 1937, George R. Ames, one of the members of the Idaho Fruit and Vegetable Advertising Commission filed with Guy Graham, as chairman of said commission, a claim against the Idaho Fruit and Vegetable Advertising and Development Fund in the sum of $9.20 for one day's compensation for attending a meeting of the commission held at Boise, November 18, 1937, and traveling allowance from Emmett to Boise and return in the sum of $4.20; that said claim was in writing and on a form furnished by the state auditor for making claims against the state, and was certified by the claimant as correct and just, and that the services and expenses had been actually incurred in behalf of the state, and that payment had not been made therefor; that said claim was in all respects in full compliance with the provisions of section 13, chapter 252, 1937 Session Laws, and all other laws of the state applicable thereto; that November 30, 1937, said claim was certified by said commission to the state auditor and on the same day was certified by the state auditor to the state board of examiners for approval and allowance; that said certification by the state auditor was in form and manner as provided by section 65-2013, I. C. A., and in all respects conformed to the provisions of said section; that November 30, 1937, the state board of examiners approved and allowed the claim in full and indorsed their approval thereon and returned it to the state auditor, who, on said date, drew his warrant No. 14217 on the state treasurer in the sum of $9.20 against the Idaho Fruit and Vegetable Adver-

tising and Development Fund (annexing a true copy of the claim); that December 8, 1937, George R. Ames presented said warrant to the state treasurer and demanded payment as provided by section 65-1101, I. C. A.; that the state treasurer refused to pay said warrant, and indorsed thereon the following: "Payment refused Dec. 8, 1937 on advice of Attorney General (signed) Myrtle P. Enking St. Treas.": that said claim is a valid and existing obligation of the state and payable out of said fund; that the services were rendered and the expenses incurred by the said George R. Ames in the discharge of his duties under said chapter 252, 1937 Session Laws; that by reason of the refusal of the state treasurer to pay the warrant, petitioners are and will be unable to perform their duties under said statute and that the State of Idaho will be subjected to damage and irreparable injury; that petitioners have no plain, speedy, or adequate remedy at law or in equity.

Upon the filing of the petition, an order was made directing the issuance of an alternative writ of mandate against the state treasurer directing her to pay the warrant or to show cause why she should not be compelled to do so. Pursuant to the order, an alternative writ of mandate issued commanding the state treasurer to pay the warrant or to show cause, and was served upon the state treasurer. The state treasurer answered and denied all the allegations of the petition except her capacity as state treasurer, and Graham's capacity as commissioner of agriculture, and by an affirmative defense challenged the constitutionality of chapter 252 upon numerous grounds.

Thereafter, a complaint in intervention was filed by William Rose, G. W. Browning, and J. K. Kellogg, in which it was alleged that they were farmers engaged in growing agricultural crops in the State of Idaho and had an interest in the proceedings as taxpayers of the state. Other matters were also pleaded but later stricken. The intervenors adopted the allegations of the answer of appellant Enking and likewise challenged the constitutionality of chapter 252.

December 30, 1937, it was "stipulated and agreed by and between the plaintiff, defendant, and interveners herein, by and through their attorneys of record as follows:

"That for the purpose of submitting the above entitled cause to the court for decision herein it is hereby stipulated and agreed that all of the allegations contained in plaintiff's petition for writ of mandate on file in the above entitled action are true and correct if Chapter 252, 1937 Session Laws of Idaho is a valid and constitutional enactment of the Legislature of the State of Idaho.

"That this stipulation is entered into for the purpose of submitting said cause for decision to the District Court as to any questions of fact which may be raised by the answer of the defendant and interveners to said petition for writ of mandate, in that by said answers and each of them only the constitutionality of said Chapter 252, 1937 Session Laws, and various of the sections of said statute set forth and referred to in defendant and interveners' answers are intended to be questioned by the allegations set forth in said answer."

Thereafter, an application was filed by the intervenors by which they sought to be relieved from such stipulation. February 18, 1938, the court denied the application. A hearing was then had and findings of fact and conclusions of law were made and entered February 18, 1938. On the same day, judgment was entered thereon directing the issuance of a peremptory writ of mandate commanding the state treasurer to forthwith pay said claim, whereupon the clerk issued the writ. February 21, 1938, the state treasurer and intervenors appealed to this court from the judgment granting the peremptory writ of mandate, as well as from the writ.

It would be next to impossible, within reasonable limits, to discuss all the alleged errors assigned and contentions made by appellants, some of which could not affect a decision of the case. Then, too, several of the points urged and relied upon are covered by the above-quoted stipulation, including the question as to whether respondent had a plain, speedy, and adequate remedy at law under the declaratory judgments statute, as well as the contention that the commission is not a party interested in the relief sought.

Numerous errors are assigned to the effect that the title to the act in question is false, delusive, misleading and de-

ceptive, and violates the provisions of section 16, article 3, of the Constitution of Idaho. Those deemed of sufficient importance to merit later discussion are:

That it (the title) recites it is "An Act to conserve and promote the prosperity and welfare of the Idaho fruit and vegetable industry and of the state of Idaho through the conducting of a publicity, advertising and sales promotion campaign to increase the consumption of such fruits and vegetables and by-products," whereas, the term "fruits and vegetables" as defined in the body of the act includes only apples, prunes, potatoes and onions; that it recites its purpose is to impose a tax on "fruits and vegetables produced in Idaho," whereas, the tax imposed by section 11 "relates only to apples, prunes, potatoes and onions"; that it recites its purpose is to impose an additional "tax on fruits and vegetables produced in the State of Idaho" to be collected "by the dealer from the grower," whereas, the tax imposed by section 14 is limited to apples, prunes, potatoes and onions and is required to be collected by either the "dealer or handler, shipper or grower"; that it indicates an appropriation to the use of the commission of only the sum of $30,000, "or so much thereof as may be necessary," whereas in the body of the act, by sections 12, 13, and 17, it appropriates the total proceeds of two tax levies made by sections 11 and 14, and lends from the general fund to the commissioner of agriculture the sum of $30,000; that the title and the act are duplicitous and violate the provisions of said section 16, article 3, Constitution of Idaho, "in that two separate taxes are imposed thereby, the one upon shipments imposed by section 11 of said act, and the other by section 14 of said act, neither of which are designed to conserve and promote the prosperity and welfare of the Idaho fruit and vegetable industry and of the state of Idaho as declared in the title of said act, but both of which relate solely to the apple, prune, potato and onion industries."

Section 16, article 3, of the Constitution provides: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; . . . . "

The title of the act follows:

"An Act to conserve and promote the prosperity and welfare of the Idaho fruit and vegetable industry and of the State of Idaho by promoting the sale of fruits and vegetables produced in Idaho thru the conducting of a publicity, advertising and sales promotion campaign to increase the consumption of such fruits and vegetables and by-products; to levy and impose an excise tax on fruits and vegetables produced in Idaho, and to provide for the collection thereof; to create an Idaho Fruit and Vegetable Advertising and Development Fund; to vest the administration of this Act in the Idaho Fruit and Vegetable Advertising Commission, and to provide for the powers, duties and authority of said commission hereunder; and to provide penalties for violations of this act. To provide for the appointment and payment of expenses of members of such commission and to prescribe powers, duties and functions of such commission and the qualifications and term of office of members thereof; to provide for the adoption, by said commission, of rules, regulations, and orders necessary and proper for an effective administration and enforcement of this Act; to provide for the levying and collection of assessments and disbursements thereof; to levy and impose a tax on fruits and vegetables produced in the state of Idaho and provide for the collection thereof by the dealer from the grower; that the sum of Thirty Thousand Dollars ($30,000.00) or so much thereof as may be necessary is hereby appropriated to the Idaho Fruit and Vegetable Advertising Commission from any monies in the state treasury not otherwise appropriated."

In support of the attack made upon the title, appellants rely upon *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873, *State v. Dolan,* 13 Ida. 693, 700, 92 Pac. 995, 14 L. R. A., N. S., 1259, and *Federal Reserve Bank v. Citizens B. & T. Co.,* 53 Ida. 316, 23 Pac. (2d) 735.

In *Katz v. Herrick, supra,* this court had under consideration the sufficiency of the title of an act (1905 Sess. Laws, p. 36) validating and legalizing transactions of foreign corporations which had not complied with the provisions of the constitution and statute. The title, "An act relating to foreign corporations doing business in the state

of Idaho," we there correctly said, "would never suggest to the most imaginative reader that it is the index to an act which has for its sole and only purpose the relief of foreign corporations from the penalties and liabilities incurred by reason of their violating the law," and held, as we have held repeatedly that "The purpose of the title is to indicate to the lawmaker and the citizen as well the character and subject matter of the legislation proposed by the act."

The title to the act, it will be observed, indicated that the act related only to foreign corporations lawfully doing business in the state, whereas the act actually related to corporations which had been doing business in the state, but in violation of both the constitution and the statute. There was no hint that the sole and only purpose of the act was to relieve such foreign corporations of the pains, penalties and forfeitures incurred by them in the transaction of business within the state in violation of both the constitution and the statute.

In *State v. Dolan, supra,* the court had under consideration the sufficiency of the title of "An Act (Sess. Laws, 1907, p. 223) to set apart Sunday as a day of public rest," etc. In that case, we adhered to the rule announced in *State v. Doherty,* 3 Ida. 384, 29 Pac. 855: "It is sufficient if the act treats of but one general subject, and that subject expressed in the title. To hold that each subdivision of the subject, and each and every of the ends and means necessary for the accomplishment of the object of the act, must be specifically mentioned in the title, would greatly embarrass legislation, and accomplish no legitimate purpose."

The court also reiterated its approval of the doctrine that "The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection."

And the court approved the rule announced in *State v. Board of Commrs. of Humboldt Co.,* 21 Nev. 235, 29 Pac. 974: "If the provisions of a statute all relate, directly or indirectly, to the same subject, have a natural connection,

and are not foreign to the subject expressed in the title, it is permissible to unite them in the same act.''

The rule announced in *Turner v. Coffin*, 9 Ida. 338, 358, 74 Pac. 962, was likewise approved and adhered to, where the court said: ''It seems to have been generally recognized by the authorities as the intention of the framers of such a constitutional provision to require a title sufficiently definite and comprehensive as to indicate to one reading it the general scope and purpose of the legislation intended by the act, and that if the title be sufficient for that purpose it will be held as including all necessary and incidental legislation necessary to make the general purpose of the act operative.''

After having thus stated and fixed the test by which the sufficiency of a title is to be determined, this court, discussing that matter, said: ''So far as this court is concerned, it has been determined that the title should indicate the general scope and purpose of the legislative enactment, and be so comprehensive as to give notice of such proposed legislation. The title should not be of such a character as to mislead or deceive, either the law-making body, or the public, as to the legislative intent. It should not cover legislation which is contradictory or not connected with or related to the general subject stated in the act. It should be broad enough to cover the subjects dealt with in the act, but not too broad, so as to indicate an intention to legislate upon a subject which the body of the act falls short of accomplishing, or departs therefrom.''

In *Federal Reserve Bank v. Citizens B. & T. Co., supra,* the court passed on the sufficiency of the title of a statute entitled ''An Act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money.'' While the title of that act indicated that the sole purpose of the proposed legislation was to ''expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money,'' the statute, nevertheless, actually, by section 13, provided that

''When a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at

such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank.''

 In determining that such title was insufficient to express the subject matter of section 13 giving preferred claims in the circumstances above stated, of which there was not the slightest hint, the court simply approved and applied the rule firmly established in this jurisdiction that the title of an act should indicate the general scope and purpose of the legislative enactment, and be sufficiently comprehensive to give notice of the proposed legislation, and that it should embrace but one subject and matters properly connected therewith, and that such subject should be expressed in the title.

Other cases stating the test by which the sufficiency of titles should be determined are: *Pioneer Irr. Dist. v. Bradley*, 8 Ida. 310, 317, 68 Pac. 295, 101 Am. St. 201, where it was held:

'' 'The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection' . . . . 'It matters not that the act embraces technically more than

one subject, one of which only is expressed in the title, so that they are not foreign and extraneous to each other, but blend together in the common purpose evidently sought to be accomplished by the law' . . . . 'If the provisions of a statute all relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title, it is permissible to unite them in the same act' . . . . 'We are required to look to the body of the act, and the provisions therein contained for the ascertainment of the subject matter. The title is of but little importance, except to index and fairly indicate the subject of legislation.' "

*State v. Jones,* 9 Ida. 693, 700, 75 Pac. 819:

"The title sufficiently designated the subject of the act. It plainly indicated the object and purpose of the act, which is all the constitution requires. The subject of a statute is one thing, and its detailed provisions quite another; one is the topic, the other its treatment; one is required to be stated in the title, the other not."

*State of Idaho v. Pioneer Nurseries Co.,* 26 Ida. 332, 336, 143 Pac. 405:

"It has been repeatedly held by this court that the title to an act under the provisions of said section of the constitution is sufficient if the act treats of but one general subject and that subject is expressed in the title. (Citing cases.)

"The purpose of said constitutional provision (Sec. 16, Art. 3) is to prevent fraud and deception in the enactment of laws; to prevent log-rolling legislation; to avoid inconsistent and incongruous legislation and to reasonably notify legislators and the people of the legislative intent to be enacted in the law."

*Boise City v. Baxter,* 41 Ida. 368, 376, 238 Pac. 1029. In that case, the court, speaking of the unity of title and subject matter, stated:

"It is said that if the provisions of an act all relate directly or indirectly to the same subject, having a natural connection therewith and are not foreign to the subject expressed in the title, they may be united in one act; that however numerous the provisions of an act may be, if they can be by fair intendment considered as falling within the

subject matter legislated upon in such act or necessary as ends and means to the attainment of such subject, the act will not be in conflict with this constitutional provision; that if an act has but one general subject, object or purpose, and all of its provisions are germane to the general subject and have a necessary connection therewith, it is not in violation of this constitutional provision; that said provision was not intended to prevent the incorporation into a single act of the entire statutory law upon one general subject. We think this is a correct exposition of the purpose, meaning and rules for the application of this constitutional provision.''

And in *Utah Power & Light Co. v. Pfost,* 286 U. S. 165, 188, 52 Sup. Ct. 548, 76 L. ed. 1038, 1050, the Supreme Court of the United States said:

''The supreme court of Idaho has laid down the proper rule in *Pioneer Irr. Dist v. Bradley,* 8 Ida. 310, 68 Pac. 295, 101 Am. St. 201, to the effect that the purpose of the constitutional provision is to prevent the inclusion in title and act of two or more subjects diverse in their nature and having no necessary connection; but that if the provisions relate directly or indirectly to the same subject, have a natural connection · therewith, and are not foreign to the subject expressed in the title, they may be united.''

Stated in concise form, the title in question here recites that it is an act: To promote the prosperity and welfare of the Idaho fruit and vegetable industry and of the state of Idaho; to promote such prosperity by conducting an advertising campaign; to levy an excise tax on fruits and vegetables produced in Idaho; to provide for the collection of such tax; to create a fruit and vegetable advertising fund; to vest the administration of the act in the fruit and vegetable advertising commission; to provide for the powers, duties and authority of the commission; to provide penalties for the violation of the act; to provide for the appointment and payment of the expenses of the members of the commission; to prescribe the qualifications and terms of office of the members of the commission; to provide for the adoption, by the commission, of rules, regulations and orders necessary and proper for the effective administration

and enforcement of the act; to provide for the disbursement of the tax to be levied; to provide for the collection of the tax by the dealer from the grower; to appropriate the sum of $30,000 from any moneys in the state treasury, or so much thereof as may be necessary, not otherwise appropriated, to the fruit and vegetable advertising commission.

It is at once evident that the object, or subject, of the title is *advertising*. In other words, to advertise, to make known, to publish abroad, to conduct an "advertising campaign," to use the words of the title. The title, then, clearly and unmistakably stamps the act as an *advertising statute*. The provisions providing for the creation of an advertising commission, vesting it with certain powers and duties, providing for levying and collecting an excise tax, creating an advertising fund, and appropriating the sum of $30,-000, including the other provisions above enumerated, are all, not only properly, but necessarily, connected with the legislative plan to advertise the products of agriculture mentioned in the statute.

It is, nevertheless, contended by appellants that the title is false, delusive, deceptive, and misleading in the particulars hereinbefore stated. In discussing these contentions we must keep in mind that we are here dealing with an "advertising statute" enacted for the sole purpose of conducting an advertising campaign to increase the sale, and, therefore, the consumption, of fruits and vegetables. How, then, could the fact that the title recited that it was an act to promote the prosperity and welfare of the fruit and vegetable industry, and that the body of the act defined "fruits and vegetables" as including only apples, prunes, potatoes, and onions, be false, delusive, deceptive or misleading? The title gave the reader notice of what? That the purpose of the enactment was to advertise. But advertise what? Idaho fruits and vegetables. It must be conceded that apples and prunes are fruits and that potatoes and onions are vegetables. It would be most unreasonable to require of a title that certainty and particularity required of common law indictments, as appellants seem to insist. If, after giving notice that the object of the proposed legislation was to advertise fruits and vege-

tables, the statute had provided for conducting an advertising campaign for the sale of say, for example, horses and cattle, then there would be some merit in appellants' contention.

The title first recites, as hereinbefore pointed out, that a tax is to be imposed and levied on fruits and vegetables. Thereafter it again recites that a tax is to be imposed and levied on fruits and vegetables, to be collected "by the dealer from the grower." Section 14 levies a tax on fruits and vegetables covered by the statute and then provides for the collection of the tax "by the dealer or handler." Appellants contend that the title recites that the act is for the purpose of imposing an *additional* tax on fruits and vegetables to be collected "by the dealer from the grower, whereas in truth and in fact the tax imposed by section 14 of said act is limited to apples, prunes, potatoes and onions only, and is required to be collected by either the dealer or handler, shipper or grower." While it is true the title first recites that a tax is to be imposed and levied on fruits and vegetables and that it thereafter again recites that a tax is to be imposed and levied on fruits and vegetables, to be collected by the dealer from the grower, the title does not recite, as stated by appellants, that the "act is for the purpose of imposing an additional tax." Nor do we think that the language of the title is subject to the interpretation that it was its purpose to impose and levy an *additional*, or double, tax. It is simply surplusage, a harmless repetition of a clear purpose to impose and levy a tax on fruits and vegetables to provide funds with which to pay advertising and other expenses, and is in no sense misleading.

The title, it will be remembered, recites that the sum of $30,000, or so much thereof as may be necessary, is appropriated from any moneys in the state treasury, not otherwise appropriated. Section 12 provides that all moneys received under the provisions of the act shall be paid into the Fruit and Vegetable Advertising and Development Fund, and that said moneys "are hereby appropriated and made available for defraying the expenses of the Commission and of administration and enforcement of all provisions

of this act.'' Section 13 provides that ''moneys received through the provisions of this act by the Commissioner of Agriculture shall be appropriated and used'' for certain stated purposes. Section 17 appropriates $30,000 out of the general fund of the state treasury, and then provides ''that the said $30,000.00 shall be refunded from the said Idaho Fruit and Vegetable Advertising and Development Fund out of the first moneys accrued in said Fund.''

■ Appellants contend that the title is misleading in that it ''indicates'' an appropriation of only $30,000, whereas, in the body of the act, by sections 12, 13 and 17, it appropriates the total proceeds of two tax levies made by sections 11 and 14, and lends from the general fund to the commissioner of agriculture the sum of $30,000. There is no merit in that contention. As just pointed out, the title gave notice that an appropriation in the sum of $30,000 was to be made. And it is as clear as the noonday sun that the legislature simply intended that the money received from the tax on apples, prunes, potatoes, and onions should be paid into the Fruit and Vegetable Advertising and Development Fund, and that when such moneys reached the amount so appropriated, then that that sum should be returned to the general fund.

■ It is further contended that the title and the act are duplicitous ''in that two separate taxes are imposed thereby, the one upon shipments imposed by section 11 of said act, and the other by section 14, of said act, . . . . but both of which relate solely to the apple, prune, potato and onion industries.''

Section 11 provides:

''That there is hereby levied and imposed until July 1, 1939, a tax of 1¢ on each 100 lb. unit or combination of packages making a 100 lb. unit of apples, prunes, potatoes and onions shipped from or within the State of Idaho.''

And section 14 provides:

''That there is hereby levied and imposed until July 1, 1939, a tax of one cent per one hundred pounds on all fruits and vegetables covered by this act upon the producer of said fruits and vegetables to be collected by the dealer or handler thereof; and it is mandatory that said collection be made, said collection to be made and deducted from purchases of or

proceeds received for fruits and vegetables bought from or handled for said grower in the regular channels of trade and that said dealer be held responsible to said Idaho Fruit and Vegetable Advertising Commission for the collection and payment thereof.''

It will be noted that section 11 makes each package of ''one hundred pounds'' the unit; that it imposes a tax of one cent on that package unit, and that it does not impose any tax whatever upon shipments. And it will be further noted that each section, 11 and 14, contains a provision that the tax is to be ''levied and imposed until July 1, 1939,'' from which it is at once apparent that the legislature intended to levy but one tax, which tax is to expire July 1, 1939. If, as argued by appellants, these sections levy two cents, of course then, each unit would necessarily be taxed two cents, instead of one, in which case it would not constitute a ''double'' tax—it would only increase the tax from one cent per unit to two cents per unit. Had the legislature intended to make a levy of two cents per unit, instead of one, it could have easily accomplished that by merely providing ''that there is hereby levied and imposed until July 1, 1939'' a tax of *two* cents per unit on the fruits and vegetables mentioned in the statute. It is simply another instance of inadvertent repetition, surplusage, which could not have misled anyone.

Tested by the provisions of section 16, article 3, of the Constitution of Idaho, as interpreted by the foregoing decisions of this court, we are forced to the conclusion that the title is amply sufficient to indicate the general scope and purpose of the statute; that it is sufficiently comprehensive to give notice of the proposed legislation; that it is not broader in terms and scope than the body of the statute, and that it is not false, delusive, misleading, or deceptive as contended by appellants.

Having disposed of appellants' attack upon the title, we turn to the attack made upon the statute. In passing upon the merits of the attack on the statute, we are very materially aided by the disposition of a similar attack made upon a similar statute by the Supreme Court of the state of Florida. In 1935 the legislature of that state passed a series of acts designed to regulate and benefit the citrus fruit industry of

the state. A commission was created and provision made for grading and processing citrus fruit to the end that the marketing of unfit fruit might be prevented. Provision was also made for advertising the fruit that the buying public might be informed of the superior quality of Florida citrus fruits, and, to accomplish that and pay the expenses incident thereto, a tax was levied and collected on a per box basis. Some who felt aggrieved because required to pay the tax brought suit to enjoin the collection. It was contended that the tax was a property tax; that it was not based upon a uniform and equal rate of taxation; that even though the tax might be held to be an excise tax it would be a burden on interstate commerce; that it violated the equal protection clause and the due process clause of the federal Constitution; that the tax was arbitrary and discriminatory and not for a public purpose. These are substantially the same contentions made by appellants in the case at bar.

While there are some differences in phraseology, a comparison of the Florida and Idaho statutes reveals the intention of the legislature of this state to do for apples, prunes, potatoes, and onions what the legislature of Florida did for the citrus fruit industry, and to that end, substantially, and insofar as pertinent here, followed the Florida statute. Therefore, and while the decision of the Supreme Court of Florida in *C. V. Floyd Fruit Co. v. Florida Citrus Com.*, 128 Fla. 565, 175 So. 248, 112 A. L. R. 562, disposing of the above-stated objections to the Florida legislation, is not binding on this court, its reasoning is persuasive and convincing. There, the really decisive question was as to whether the tax was levied on the privilege of handling fruit, selling fruit, delivering fruit for shipping, or delivering fruit for canning or processing into by-products, or a property tax levied upon the fruit itself. And, here, too, the decisive question is: Is the tax levied upon the privilege of handling fruit, selling fruit, delivering fruit for shipping or delivering fruit for canning or processing into by-products, or is it a tax levied upon the fruits and vegetables mentioned in the statute?

Under the Florida statute the tax was payable at the time, and not before, the fruit was first delivered into the primary channels of trade, and under our statute the tax is payable

at the time, and not before, the fruits and vegetables are first delivered into the primary channels of trade. And the Florida statute covering oranges, on the question as to when oranges should be deemed to be delivered into the primary channels of trade, provided:

"Oranges shall be deemed to be delivered into the primary channel of trade when any such oranges are sold, or delivered for shipment, or delivered for canning and/or processing into by-products."

And the Idaho statute provides:

"Fruits and vegetables shall be deemed to be delivered into the primary channel of trade when any such fruits and vegetables are sold or delivered for shipment, or delivered for canning and/or processing into by-products."

It will be observed that the provisions of the two statutes are identical with the exception that the Florida statute applies to oranges and the Idaho statute to fruits and vegetables.

In *Sligh v. Kirkwood,* 237 U. S. 52, 35 Sup. Ct. 501, 503, 59 L. ed. 835, the Supreme Court of the United States took judicial notice of the fact that the raising of citrus fruits is one of the great industries of the state of Florida, and held that "it was competent for the legislature to find that it was essential for the success of that industry that its reputation be preserved in other states wherein such fruits find their most extensive market. . . . . The protection of the state's reputation in foreign markets, with the consequent beneficial effect upon a great home industry, may have been within the legislative intent, and it certainly could not be said that this legislation has no reasonable relation to the accomplishment of that purpose." And in *Maxcy, Inc., v. Mayo,* 103 Fla. 552, 139 So. 121, 128, the Supreme Court of Florida said:

"This court takes judicial notice of the fact that the citrus industry of Florida is one of its greatest assets. Its promotion and protection is of the greatest value to the state, and its advancement redounds greatly to the general welfare of the commonwealth."

It was likewise competent for the legislature of this state to find that "the fruit and vegetable production in Idaho comprises the major agricultural activity of Idaho, and the business of expanding markets and increasing consumption

of fruits and vegetables is of public interest and because this act is designed to promote the general welfare of the state of Idaho, this act is passed." (Sec. 2, chap. 252, 1937 Sess. Laws, p. 471.) And this court takes judicial notice of "Whatever is established by law." (Subd. 2, sec. 16–101, I. C. A.)

In the Floyd Fruit Company case, *supra,* the court held that the tax imposed by the Florida statute was levied on the privilege of turning the fruit into the primary channels of trade, on the basis of one cent per box on oranges, and not upon the fruit; that it was an excise tax and not a property tax, and did not violate constitutional rules of equity, uniformity, or due process; that it was not a burden on interstate commerce; that the tax having been levied for the purpose of providing an advertising fund for advertising citrus fruits was valid and for a public purpose, since the protection and promotion of the citrus fruit industry was a matter of public concern.

 The tax imposed by the Idaho statute is likewise levied on a privilege, to wit, the privilege of turning apples, prunes, potatoes, and onions into the primary channels of trade, on the basis of one cent·per box, and not upon such fruits and vegetables; it, too, is an excise tax and not a property tax, and does not violate constitutional rules of equality, uniformity, or due process; neither is it a burden on interstate commerce; the tax having been levied for the purpose of providing an advertising fund for advertising such fruits and vegetables is valid and for a public purpose in that the protection and promotion of the apple, prune, potato, and onion industry is as much a matter of public concern to Idaho as the citrus fruit industry is to Florida. This view is strongly supported by the case of *Diefendorf v. Gallet,* 51 Ida. 619, 10 Pac. (2d) 307, where this court held that the phrase, "excise tax," in the modern sense, is any tax not falling within the classification of a poll or property tax, and embraces every form of burden not laid directly upon persons or property.

 Appellants urge that the verified petition filed in this proceeding is not an affidavit within the meaning of section 13–303, I. C. A., hence will not support *mandamus.* That section provides:

" . . . . It (the writ) must be issued upon affidavit, . . . . " In passing on the question as to whether a verified petition satisfies the statute, this court in *Lewis v. Mountain Home Co-op. Irr. Co.,* 28 Ida. 682, 689, 156 Pac. 419, held that "The proceedings (*mandamus*) are initiated by affidavit, and not by complaint; and while this court has held that an affidavit verified in the form of a complaint will be construed as a proper affidavit to set the proceedings in motion, we think it should not be treated as an ordinary complaint in a civil action with which any other cause of action may be united to suit the convenience of the pleader," which effectually disposes of appellants' objection.

Neither appellant state treasurer nor intervenors pleaded that the commission is not the real party in interest or that the exclusive right to institute actions in the name of the state lies with the attorney general; therefore, and regardless of the legal effect of the stipulation hereinbefore quoted, it is now too late to raise these questions. It is fundamental that an appellate court will not consider any question not put in issue by the pleadings. (*Coulson v. Aberdeen-Springfield Canal Co.,* 39 Ida. 320, 325, 227 Pac. 29; *Curtis v. Pfost,* 53 Ida. 1, 21 Pac. (2d) 73; *Garrett Transfer etc. Co. v. Pfost,* 54 Ida. 576, 33 Pac. (2d) 743; *Johnson v. Diefendorf,* 56 Ida. 620, 57 Pac. (2d) 1068.)

Appellants contend that the statute omits a substantial portion of the state from its operation and that it thereby becomes local, discriminatory, and void in that it excludes from eligibility to serve on the commission a large portion of the farming population of Oneida, Cassia, Power, Minidoka, Blaine, Bingham, Butte, Clark, Custer, and Lemhi counties.

Section 3 provides that two of the "Commissioners shall be appointed from the district known as the district from Pocatello North and South and East of American Falls, two of the representatives shall be chosen from the district known as the district from Rupert West and including the City of Mountain Home. Two of the representatives shall be chosen from the district West of Mountain Home and North to the Salmon River. One representative shall be chosen from the district North of the Salmon River." It will be observed

that the boundaries of districts, No. 1, No. 3, and No. 4, are definitely fixed. Consequently, and as the trial court held, the remaining territory of the state constitutes district No. 2.

 As the Supreme Court of the United States said in *National L. R. Board v. Jones & Laughlin S. Corp.*, 301 U. S. 1, 30, 57 Sup. Ct. 615, 81 L. ed. 893, 907, 108 A. L. R. 1352: "The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same."

We come now to one of the most difficult questions presented by the record in this case. The petition alleges that the Ames claim was approved by the state board of examiners and that it was the duty of the state auditor to draw, and the state treasurer to pay, the warrant covering the claim. And respondents contend that "if it should be held that the treasurer is the person to draw warrants against this particular fund, the established public policy of the state since 1866 would be invaded," and that it would be wholly impossible for the auditor to perform some of the duties required by section 65–901, I. C. A.

On the other hand, appellants contend that, under this "advertising" statute, the state treasurer is charged with the duty of both drawing and paying warrants.

Section 1 of article 4 of the Constitution of Idaho provides that "The executive department shall consist of a . . . . state auditor, state treasurer, . . . . They shall perform such duties as are prescribed by this constitution and as may be prescribed by law." Section 65–901, I. C. A., prescribes the duties of the state auditor in the matter of drawing warrants on the state treasurer, as follows:

" . . . . 7. To keep an account of all warrants drawn upon the treasurer, and a separate account under the head of each specified appropriation, showing at all times the unexpended balance of such appropriation. . . . . 9. To keep a register of warrants showing the fund upon which they are drawn, the number, in whose favor, for what service, the appropriation applicable to the payment thereof, when the lia-

bility accrued, and a receipt from the person to whom the warrant is delivered. . . . . 14. To draw warrants on the treasurer for the payment of moneys directed by law to be paid out of the treasury; but no warrant must be drawn unless authorized by law. . . . . 15. To furnish the state treasurer with a list of warrants drawn upon the treasury.''

 Section 65–1101, I. C. A., prescribes the duties of the state treasurer in the matter of the payment of warrants drawn by the state auditor, as follows: '' . . . . 4. To pay warrants drawn by the auditor out of the funds upon, and in the order in, which they are drawn.'' And subd. 12 of that section provides that the state treasurer shall ''discharge such other duties as may be imposed upon him by law.''

Section 13 of the statute in question here provides:

'' . . . . Vouchers shall be submitted by the Commission to the State Auditor and upon approval by the State Board of Examiners he shall forthwith submit such vouchers to the Treasurer for issue of warrants thereon.''

It must be conceded that if we hold the legislature intended to make it the duty of the state treasurer to draw all warrants on the Fruit and Vegetable Advertising and Development Fund, then, that the state treasurer would both draw and pay warrants, with the result that the checks and balances established some seventy-two years ago, and ever since maintained, would be abolished so far as the drawing of warrants on that fund is concerned. Did the legislature intend, in this single instance, to abolish the checks and balances which have stood the test of nearly three-quarters of a century, and proven entirely satisfactory? It does not seem reasonable that the legislature intended to do that because it did not provide better, or any, checks and balances. Furthermore, no statute has been called to our attention, and it is safe to say none can be found in a single state of the Union, which requires a state treasurer, or for that matter, any county treasurer, to both draw and pay warrants. Is it not more reasonable, then, to take the view that the legislature intended to use the word ''auditor'' instead of the word ''treasurer,'' and that the use of the word ''treasurer'' was simply a clerical error which, if permitted to stand, would make the provision

an absolute absurdity? A similar situation was presented to this court in *Frontier Mill. etc. Co. v. Roy White etc. Co.,* 25 Ida. 478, 485, 138 Pac. 825, where it was said:

"From reading the above amendment it is apparent that the word 'of' was inserted in the act on the third line in lieu of the word 'or.' The insertion of the word 'of' was evidently a clerical error, and no doubt the act was clearly intended by the legislature to read as follows: 'Any person, firm or corporation, superintendent or trustees, or any board of directors of any firm or corporation,' etc.

"To hold otherwise, that portion of the section of the statute just referred to would convey no meaning and would be an absolute absurdity. We think the rule is well stated in Black on Interpretation of Laws, pages 151 and 157, that 'the use of inapt, inaccurate or improper terms or phrases in a statute will not defeat the act, provided the real meaning of the legislature can be gathered from the context or from the general purpose and tenor of the enactment. In such cases, the words in question will be interpreted according to that meaning which the legislature actually intended to express, although this may involve a departure from the literal signification.'

" 'Clerical errors or misprints, which, if not corrected, would render the statute unmeaning or nonsensical, or would defeat or impair its intended operation, will not vitiate the act; they will be corrected by the court and the statute read as amended, provided the true reading is obvious and the real meaning of the legislature is apparent on the face of the whole enactment.' The word 'and' in a statute may be read 'or,' and *vice versa,* whenever the change is necessary to give the statute sense and effect, or harmonize its different parts, or carry out the evident intention of the legislature. We think we are clearly within the rule in our construction of the above statute as far as this question is concerned."
(See, also, *Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365, and *Washington Fire Co. v. Yates,* 13 Del. Ch. 32, 115 Atl. 365.)

Aside from the fact that the legislature used the word "treasurer," in that part of section 13 above quoted, instead of the word "auditor," there is not the slightest hint anywhere in the statute that the legislature intended to abolish

existing wholesome checks and balances, and introduces the exceedingly strange and senseless innovation that the state treasurer should draw warrants on herself. Surely the legislature could not have intended to enact such a choice bit of freak legislation. But even though it be conceded, for the moment, that the legislature intended to bring such a freak into the world of legislation, and that such intention was clearly and unequivocally expressed, we would still be compelled to hold against the legitimacy of the legislative child, for the following reasons: Section 65–901, *supra*, prescribes the general duties of the state auditor. They are, among others: To draw warrants on the state treasurer for the payment of moneys directed by law to be paid out of the state treasury; to keep an account of all warrants drawn; to keep a separate account showing the unexpended balance in each appropriation; to keep a register of all warrants drawn, showing the fund upon which they are drawn, the number, in whose favor, for what service, the appropriation from which payment shall be made, when the liability accrued, and a receipt from the person to whom the warrant is delivered. If, then, the legislature intended to transfer from the state auditor to the state treasurer the duty of drawing warrants upon the Fruit and Vegetable Advertising and Development Fund, which duty section 65–901, *supra*, would otherwise impose upon the state auditor, it gave no notice of that intention in the title of the act. In which case, the above-quoted provision of section 13 would violate the requirements of section 16, article 3, *supra*.

We conclude that the act under consideration does not impose any duty on the state treasurer to draw warrants in payment of claims incurred under it.

In the trial court it was agreed by the parties, as shown by the above-quoted stipulation which was filed with the clerk, that but one question would be submitted to the court for decision: The constitutionality of chapter 252, 1937 Session Laws. Thereafter, however, intervenors sought relief from the stipulation, which the trial court denied. We do not find that appellants assign that ruling as error. However, section 3–202, I. C. A., provides that an attorney has authority to bind his client in any of the steps of an action

or proceeding, by his agreement filed with the clerk, or entered upon the minutes of the court, and this court held in *Koepl v. Ruppert,* 29 Ida. 223, 227, 158 Pac. 319, that granting relief from a stipulation entered into in the course of judicial proceedings, rested in the sound judicial discretion of the trial court. The grounds upon which the intervenors sought relief were that: ''At the time of making such stipulation these interveners were not aware of the fact that the appointment of the relators constituting the Idaho Fruit and Vegetable Advertising Commission was made before the act became effective and hence that such appointments were void.'' That showing is not sufficient to justify granting the relief intervenors sought, and, furthermore, petitioners were *de facto,* if not *de jure,* officers. (46 C. J., p. 1053, sec. 366.)

Notwithstanding the fact that appellants entered into a valid and binding agreement whereby it was mutually stipulated between all the parties that they would submit to the trial court but a single question, stating it, many other questions have been argued, for instance, that certain of the provisions of the statute allegedly authorizing summary searches are void. We conclude, that, under the terms of the stipulation, appellants are not entitled to have that question determined by this court. Moreover, we have discussed and passed upon every question deemed to be important and material to a decision of this case.

The judgment of the district court is affirmed.

Ailshie and Givens, JJ., concur.

Morgan, J., dissents.

Budge, J., expresses no opinion.

### ON REHEARING.

#### (September 21, 1938.)

HOLDEN, C. J.—A rehearing of this cause was granted on the petition of appellants Rose, Browning, and Kellogg and the case re-argued. After a full and careful re-examination

of the contentions of appellants, we adhere to the foregoing opinion.

Ailshie and Givens, JJ., concur.

Morgan and Budge, JJ., dissent.