In the Matter of John W. Lynd, Doing Business as R. V. Tompkins Agency, Respondent, against James G. Heffernan, as Mayor of the City of Mechanicville, Appellant.

Third Department, November 16, 1955.

*James G. Heffernan* appellant in person.

*Thomas D. Nolan* for respondent.

*Per Curiam.* The city council of the City of Mechanicville authorized the petitioner-respondent to procure for the City of Mechanicville a policy of public liability insurance at a total cost of $6,740.15. Subsequently, the policy was delivered and the city council adopted a resolution reciting that the policy was proper in form and content and that the premium and the tax set forth in the voucher were correct and were due and pay-

able. The appellant, the Mayor of the city, cast the only dissenting vote. (The City of Mechanicville operates under a commission form of government; five elected commissioners constitute the city council and one of them serves as the Mayor.) The Mayor refused to countersign a check drawn in payment of the claim. The Special Term ordered him to do so and this appeal followed.

In the absence of any illegality in the transaction, the order directing the Mayor to countersign the check was obviously proper, since the city council had the power to audit the claim by a majority vote and the Mayor had no veto power over its action.

The only question of substance raised upon this appeal is whether the purchase of the contract of insurance, without competitive bidding therefor, violated section 26 of the charter of the city (L. 1915, ch. 170, as amd.). The charter section provides in part: " No contract exceeding or involving the sum of one thousand dollars ($1,000) shall be made by the city, the city council or any of the city departments unless it shall have caused to be published a notice in the official paper once a week for two weeks, inviting proposals for the same, according to the plans and specifications to be filed in the office of the department having charge of the work, and the contract shall be let to the lowest responsible bidder, who shall furnish security for its performance satisfactory to the council."

In our opinion, the competitive bidding provision does not apply to the placing of an insurance contract. The charter section refers to " plans and specifications to be filed in the office of the department having charge of the work ". This language cannot reasonably be applied to the purchase of an insurance policy. The language indicates that what was contemplated was competitive bidding with respect to the purchase of physical goods and the performance of public construction work.

The charter section may be usefully compared with section 103 of the General Municipal Law, which requires that " all contracts for public work " and " all purchase contracts " involving more than specified amounts shall be let by competitive bidding. It has been held by the Comptroller that a policy of fire insurance is not a " purchase contract " within the meaning of this section (10 Op. St. Compt., 1954, p. 40).

In a well-considered Pennsylvania case, it has been held that a contract of public liability insurance does not come within a statute providing that " All contracts or purchases made by any

township, involving the expenditure of over five hundred dollars '' shall be made only after competitive bidding and '' In every instance in which any contract for any public work, construction, materials, supplies, or other materials or things for any township shall be awarded upon competitive bids, it shall be the duty of the authorities authorizing the same to award said contract to the lowest responsible bidder '' (*London & Lancashire Ind. Co.* v. *Upper Darby Twp.,* 28 Del. Co., 223). As the court pointed out in the cited case, '' The selection of an insurance company and the necessary adoption of the insurance company's attorney is of great importance to a municipality and they should have entire freedom of selection '' (p. 230). Furthermore, '' an efficient insurance company does more than write a policy. The writing of such a contract * * * involves frequent and efficient inspection of the insured property, it involves prompt, honest, and efficient service in the settlement of claims, and it is well known that insurance companies differ greatly in their attitude between [sic] the settling of claims '' (pp. 230–231).

The relationship between a competent insurance broker and his client is a relationship of personal trust and confidence. The contract with the broker calls for the rendition of personal services of a type uniformly held to fall outside the scope of competitive bidding requirements. (See analogous cases collected in notes, 44 A. L. R. 1150, and 142 A. L. R. 542.)

In the Pennsylvania case cited above, the point was emphasized that the premiums for insurance policies were '' practically standard '' and that competitive bidding would not result in any different premium and the court therefore held that competitive bidding should not be required. The situation in the present case is of a directly contrary nature but the same conclusion should nevertheless be reached, although for a different reason. Here the contract was of a unique kind for which there were no standard rates. The terms of the insurance contract were the result of private negotiation with the representatives of the insurance companies. The record indicates that it was difficult to obtain a contract of the type sought by the city and that none of the American companies was willing to enter into such a contract. The Mayor had negotiated a contract through an agent in New York City with Lloyds of London but the city council found that contract unsatisfactory and preferred to negotiate the contract through the petitioner, a local broker. He succeeded in obtaining an insurance policy satisfactory to the city council from a pool of three French insurance companies, through a gen-

eral agent in Canada. In this situation, the inappropriateness of competitive bidding is self-evident.

The order should be affirmed, with costs.

Foster, P. J., Bergan, Coon, Halpern and Zeller, JJ., concur.

Order affirmed, with $10 costs.