Isadore Bookstein, J.
This action .by plaintiff is for a declaratory judgment, declaring constitutional article 25 of the Agriculture and Markets Law, and other incidental relief.
In the amended answer, defendant seeks a declaration that said article 25 is unconstitutional. However, in his opening statement, counsel for defendant stated that this was a mistake and that he seeks only a declaration that section 294 (subd. [2], par. [d]) of said article be declared unconstitutional.
Defendant seeks also a declaration that the Apple Marketing Order, promulgated by plaintiff, pursuant to article 25, is unconstitutional, illegal and void; that the referendum conducted by plaintiff was conducted in violation of the Constitutions of the State of New York and the United States of America; and that the payments made by plaintiff to the New York and New England Apple Institute and the Western Ncav York Apple Growers Association were made in violation of section 174 of the State Finance Law and section 8 of article VII of the New York State Constitution.
It appears that the Temporary Commission on Agriculture made an investigation and report (N. Y. Legis. Doc., 1957, No. 19) after :such commission held a .State-wide series of hearings, as a result of which it decided to sponsor an enabling act which would authorize, among other things, the making of marketing orders by the Commissioner of Agriculture and Markets (hereinafter called “ Commissioner ”), subject to two-thirds approval vote by the producers of the specified commodity in the area to be affected. The result was the enactment of article 25 of the Agriculture and Markets Law, by chapter 970 of the Laws of 1957, effective April 26, 1957. In section 292 of the Agriculture and Markets Law was contained the modern-day legislative declaration of the necessity for the legislation, by *751 reason of the vital concern for the health, safety and general welfare of the people of this State. (See, also, section 3 of the Agriculture and Markets Law.)
Subdivision (2) of section 294 of the Agriculture and Markets Law empowered the Commissioner to make and issue marketing orders, after due notice and opportunity for hearing, and subject to the approval of the 66%% of the producers in the area affected, participating in a referendum vote and by paragraph (d) of subdivision (2) of said section, he was empowered to administer and enforce any marketing order and in that connection, to prepare a budget for the administration and operating costs including advertising and sales promotion when required in any marketing order and to provide for the collection of such necessary fees to defray such costs and expenses, not to exceed 5% of the gross dollar volume of sales, to be collected from each person engaged in the production, processing, distributing or the handling of any marketable agricultural commodity produced in this State and directly affected by any marketing order issued pursuant to article 25 for such commodity.
Subdivision (5) of-section 294 of the Agriculture and Markets Law authorizes the Commissioner, in carrying out the purposes of article 25, to consider all facts available to him with respect to certain economic factors including (par. [c]) the cost of producing such agricultural commodity.
Pursuant to the provisions of article 25, but prior to its enactment, a petition was filed with the Commissioner to hold a hearing with respect to the advisability of issuing a marketing order with reference to apples produced in this State. In response to such petition, and after article 25 became effective, public hearings were held at Rochester and Albany on April 27, 1959 and April 29, 1959, respectively.
Thereafter, the Commissioner gave notice of referendum to be held on May 28, 1959, on a proposed marketing order. The notice was published in some 15 newspapers in 14 counties. In addition, news items concerning the holding of the referendum were contained in many newspapers. Radio publicity was given with reference thereto. The date, hour and place for balloting in -some 58 counties (all of the apple producing counties of the State) were fixed in the legal notice published. Agriculture extension offices were requested to give such notice as they could. Defendant received actual notice by mail.
On the State-wide referendum, 783 ballots were cast. Of these, 589 were in the affirmative and 194 were in the negative.
*752 Percentagewise, 75% plus of those participating in the referendum, voted in the affirmative.
Defendant quarrels with the notice of the referendum, contending that the number of apple growers in the State was largely in excess of the number who participated in the referendum and that the notice thereof was inadequate to give notice to all of the apple growers. There was no established list of apple growers available to the Commissioner. The notice given and the manner thereof were as good as was possible as a practical matter. Of course, there is no way of determining how many growers had notice but were not interested in participating in the referendum;
After the referendum, the Commissioner made findings of fact and conclusions of law and thereafter made the apple marketing order.
The findings of the Commissioner as well as the evidence before this court amply justify the legislative declaration in section 292 and the marketing order of the Commissioner.
So far as article 25 is concerned, as we have seen, the attack on constitutionality is limited to paragraph (d) of subdivision (2) of section 294 which confers on plaintiff the authority respecting a budget, including advertising and sales promotion. That attack is based upon the proposition that the delegation of power constitutes an unlawful delegation of legislative power. Defendant, in his brief, however, states that “It is not suggested that delegation of power to plaintiff was improper His contention here is that the delegation of power was to the producers of apples and not to the plaintiff, and that such delegation of power is unconstitutional. This contention is based upon the proposition that, under the Commissioner’s rules, no marketing order can be promulgated except upon petition of a producer and group of producers. The statute itself imposes no such limitation. It confers upon plaintiff the absolute discretion as to whether or not to promulgate a marketing order. The statutory limitation as to such an order becoming effective is that it shall be approved by 66%% of the producers affected and participating in a referendum vote. The Commissioner could, without any petition or request, make and issue the marketing order, subject only to its approval by the required percentage of producers participating in the referendum. In spite of any petition, he can refuse to make a proposed order and to submit it to a referendum. The discretion to do so is vested solely and absolutely in him. That, before exercising the power delegated to him, he prefers that a petition for such an order be made and submitted, is merely a procedural step *753 designed by him, to determine whether or not he shall exercise the power delegated to him, rather than to exercise his power arbitrarily. It is in no sense a delegation by the Legislature of its powers to producers. Since the Commissioner is permitted by subdivision (2) of section 294 of the Agriculture and Markets Law, in his sole discretion, to make the marketing order, the elements which he is to consider in moving him to his exercise of discretionary power to make such an order is wholly a matter for him to determine. Indeed, aside from his own procedural rule, the Legislature contemplated the possibility of an application or petition for a marketing order, since under subdivision (7) of section 294, it conferred upon the Commissioner discretionary power to “ require the applicants ” for such an order ££ to deposit with him such amount as he may deem necessary to defray the expenses of preparing and making effective such marketing order.”
Indeed, under subdivision 5 of section 294, it is expressly stated that the Commissioner shall take into consideration any and all' facts available to him with respect to the economic factors therein enumerated. He is not precluded from acquiring knowledge as to such facts, because they are presented to him in the form of a petition. He may acquire knowledge of such facts from any source which he deems advisable. In the final analysis, the decision as to whether or not to make such an order and submit it to a referendum is left to his uncontrolled discretion. The delegation of power is to him and him only. And, as we have already seen, defendant concedes that such delegation of power to him is not improper.
I see no distinction between the situation here presented and that which existed in United States v. Rock Royal CO-OP (307 U. S. 533). There, under the Federal Agricultural Marketing Agreement Act (U. S. Code, tit. 7, § 608c, subd. [9], par. [B]) the order required approval of two thirds of the producers. The Supreme Court held this proper, as the Congress might have put the order into effect without the approval of anyone. Here the order required approval of two thirds of the producers in a referendum. So far they are precisely the same. But defendant contends that there the order is proposed on the initiative of the Secretary of Agriculture, while here the statute authorizes the grower to put the orders into effect provided they are approved by the Commissioner. Here, the statute does not authorize the grower to put the orders into effect. Here, as there, the order, in the first instance, must be initiated by the Commissioner. The fact that the Commissioner may require a petition from interested parties before he initiates the order, *754 does not mean that he is not initiating it, within the power conferred upon him by the statute. Here, as there, the order cannot be initiated, unless the Commissioner initiates it, regardless of what petitions he may receive requesting him to initiate it. The fact that he is importuned by a petition to initiate an order does not mean that he does not initiate it within the power conferred upon him by the statute.
Again, despite the assertion, upon the trial that he attacks only the constitutionality of section 294 (subd. [2], par. [d]) of the Agriculture and Markets Law, defendant argues in his brief that the entire statute is unconstitutional on the alleged premise that the apple industry is not affected with a public interest.
It is true that the legislative declaration in section 294 of the Agriculture and Markets Law does not mention apples specifically. It deals with agricultural commodities. However, in subdivision (1) of section 293 of the Agriculture and Markets Law, the definition encompasses apples. Agricultural commodities include many segments, one of which, of course, is fruit.
In 1959, when the marketing order was promulgated, the sales value of the commercial apple crop was $28,187,000. In 1960 it reached $34,930,000 and in 1961 the total was $34,784,000. This, for those years, was a range of from 16% to 19% of the total commercial crop of apples, of the entire United States.
One of the arguments advanced by defendant is that apples represent only 3% of the $850,000,000 for all New York State agricultural commodities. New York State ranked second in the United States in 1958 and 1960 and first in 1961, in apple crop. In those same years, the cash receipts from apples in New York State ranged from 9% to 12% of all agricultural commodities, as defined in subdivision (1) of section 293 of the Agriculture and Markets Law. Moreover, in the fruit segment of agricultural commodities, out of a total of cash receipts of about $50,000,000 for all fruits, the cash receipts for the apple crop is, in round figures, $35,000,000. Clearly, in the fruit segment, the apple crop is paramount.
The contention of defendant is that the Nebbia v. New York case (291 U. S. 502) requires “ paramount importance ” of au industry to justify constitutionality of legislation permitting marketing orders of the industry.
In the original Milk Control Law (L. 1933, ch. 158) the legislative declaration was as follows: ‘ ‘ That the production and distribution of milk is a paramount industry upon which the prosperity of the state in large measure depends. ’ ’ (Agriculture and Markets Law, § 300; emphasis added.)
*755 In Nebbia, the Supreme Court of the United States accepted ■the legislative declaration and upheld the constitutionality of the Milk Control Act. It does not follow that there must in every case be a legislative declaration that the industry is paramount. (Cf. Townsend v. Yeomans, 301 U. S. 441, 451.)
Legislation similar to that involved here and dealing with specific segments of agricultural products has been sustained in various States. In most, if not all of them, advertising the product intended to be promoted was authorized by the legislation. (See Miller v. Michigan State Apple Comm., 296 Mich. 248 [apples]; Louisiana State Dept. of Agriculture v. Sibille, 207 La. 878 [sweet potatoes]; Clark v. Dwyer, 56 Wn. [2d] 425, cert. den. 364 U. S. 932 [apples]; Floyd Fruit Co. v. Florida Citrus Comm., 128 Fla. 565 [citrus fruits]; State of Maine v. F. H. Vahlsing, Inc., 147 Me. 417 [potatoes]; State ex rel. Graham v. Enking, 59 Ida. 321 [apples, prunes, potatoes and onions].)
So far as the referendum is concerned, as adequate notice as was feasible was given and the referendum was not violative of the Constitution and the result of said referendum was valid.
Defendant contends also that the assessment against growers only violates section 6 of article I of the New York State Constitution and the Fourteenth Amendment of the United States Constitution.
As to the assessment fees being levied against growers only section 294 (subd. [2], par. [d]) of the Agriculture and Markets Law permits the assessment against the classes therein named, in the disjunctive, and hence authorizes the assessment as against growers only.
The contracts with the New York-New England Apple Growers Institute and the Western New York Apple Growers Association, Inc., were let without competitive bidding. This action was not in violation of section 174 of the State Finance Law. That section deals with goods and not with services. In the nature of the contracts here let, competitive bidding would not have been feasible or practical. (See 1936 Atty. Gen. 261-262; Matter of Lynd v. Heffernan, 286 App. Div. 597.)
The contention that State funds are distributed to private corporations in the payment to those two organizations, is in violation of section 8 of article VII of the State Constitution is untenable. Subdivision (8) of section 294 expressly declares that the funds raised under the marketing order are not State funds. They are funds raised from a special class by an assessment against them for a special purpose. The funds do not go *756 into the general funds of the State. They are held in a special fund for the payment of the special purpose for which they are raised. (Agriculture and Markets Law, § 294, subd. [8].)
Plaintiff is entitled to the relief sought and to a dismissal of the defendant’s counterclaim.