DON J. WICKHAM, as Commissioner of Agriculture and Markets of the State of New York, Respondent, v. COSTANZIO A. TRAPANI, Appellant.

Third Department, July 15, 1966.

*Norman Kellar, Leonard B. Boudin* and *Henry Winestine* for appellant.

*George W. Gloning, Jr., Robert G. Blabey* and *Thomas G. Conway* for respondent.

TAYLOR, J.   Defendant appeals from a judgment of the Supreme Court at Trial Term declaring the provisions of

article 25 of the Agriculture and Markets Law to be constitutional and an apple marketing order of the Commissioner of Agriculture and Markets promulgated thereunder to be legally valid in all respects. The statute, its legislative history and the facts which prompted the Commissioner's action are fully delineated in the decision of Trial Term (41 Misc 2d 749).

Appellant first contends that the apple-growing industry is not subject to regulation by the Commissioner. Although the production of apples constitutes a relatively small percentage of the total agricultural output of the State, it has an annual market value of about $35,000,000 and constitutes two thirds of the entire fruit crop of the State. We are not prepared to say that this segment of the fruit industry is of such unimportant consequence to the health and general welfare of the people of the State as not to be subject to regulation within the criteria fixed in *Nebbia* v. *New York* (291 U. S. 502) upon which appellant principally relies. Moreover, the better reasoned authorities of other jurisdictions would indicate that the New York apple industry should be regarded as bearing sufficiently upon the public interest to be subject to State regulation and control. (See, e.g., *Miller* v. *Michigan State Apple Comm.*, 296 Mich. 248.) Nor can we say that the means selected by the Commissioner to provide advertising, promotion and publicity programs designed to create new markets for the product, to maintain existing ones, to carry on marketing research and to keep growers informed of various aspects of the industry — all within the contemplation of the grant of power contained in paragraph (d) of subdivision (2) of section 294 of the Agriculture and Markets Law — were so unrelated to the conditions of " unreasonable and unnecessary economic waste of the agricultural wealth of this state ", the existence of which the enactment of article 25 was designed to correct (Agriculture and Markets Law, § 292), as to be considered arbitrary and violative of due process.

We find no merit in the argument that paragraph (d) of subdivision (2) of section 294 of the Agriculture and Markets Law should be read to require all persons mentioned in the statute, i.e., producers, processors, distributors or handlers, to pay a part of the assessment to defray the cost and expenses of the administration of the marketing order. The Legislature's use of the disjunctive " or " makes clear that it was intended to leave to the discretion of the Commissioner the selection of the class upon which the assessment should fall. Appellant regards the assessment imposed by the Commissioner as a " tax " and complains that because he has derived no profit from his apple-

raising endeavors he should not be compelled to pay it. It is difficult to perceive any infringement upon his constitutional rights on this basis. Indeed, the assessment here involved does not appear to be a tax at all but merely a fund-raising measure incidental to a valid regulation and this is true even though the assessment may be the "heart" of the regulatory order. (See *United States* v. *Butler*, 297 U. S. 1, 59.) Moreover, we view the expenditure of the funds raised by assessment as redounding primarily to the benefit of appellant and of all other apple producers from an anticipated expansion of markets for their product. That other classes involved in apple marketing may also be benefited is or could be found to be incidental.

Appellant further argues that the time when, the places where, the manner of balloting pursued and the notice given contrived to render the referendum conducted by the Commissioner, from which the marketing order issued, unfair, illegal and void. That only a relatively small percentage of those entitled to vote participated in the referendum is of no moment. Nor is there any showing that any ineligible person was permitted to cast a ballot. In our judgment the posted notices and the newspaper and radio publicity which the referendum received together with the instructions given to all County Agricultural Agents in the State to place the notice of the referendum in the hands of growers, which presumably were followed or at least not shown to have been disregarded, were, in the absence of an established list of persons engaged in apple growing which rendered the giving of personal notice a practical impossibility, reasonably calculated under all of the circumstances to apprise interested persons of the upcoming referendum and thus measured up to the quality which the due process clause of the Fourteenth Amendment of the Federal Constitution requires. (*Schroeder* v. *City of New York*, 371 U. S. 208.) Appellant does not deny that he received the notice. Moreover, he failed to produce as a witness at the trial a single person entitled to vote on the referendum who had not received actual notice that it was to be conducted.

It is also contended upon appeal that the use of the funds collected by the Commissioner from the assessments to pay apple growers' associations for services performed under contracts with him constituted gifts of State funds in violation of section 8 of article VII of the Constitution of the State of New York and of section 174 of the State Finance Law which requires that public contracts involving more than a specified amount shall be let by competitive bidding. The declaration on the subject legislation that the proceeds of the assessment are not

to be considered State funds (Agriculture and Markets Law, § 294, subd. [8]) fortified by the fact that the assessments were not exacted by the use of the taxing power of the State negates the contention that the Commissioner was handling public money. Furthermore, the payments cannot be deemed a gift in any sense since they were made in reimbursement for services performed pursuant to subsisting contracts. The provisions of section 174 have no application to contracts of this character. (*Matter of Lynd* v. *Heffernan*, 286 App. Div. 597, mot. for rearg. and mot. for lv. to app. den. 1 A D 2d 793.)

The contention that article 25 effects an unlawful delegation of legislative power to the apple growers is fully discussed and was correctly adjudged in the trial court's decision.

Finally, concerning plaintiff's argument that defendant not having timely challenged the marketing order by resort to article 78 of the CPLR may not raise the defenses in his amended answer which challenged the constitutionality of the statute and the order we merely note the fact that plaintiff is the party who sought a declaration that his marketing order "is constitutional and is in all respects legal and proper." To deprive defendant of the right to deal with the very questions put in issue by plaintiff would deny to him access to the judicial process which plaintiff himself first invoked.

The wisdom of this marketing order and the equitability of its application are administrative matters without the scope of our power to review in an action for a declaratory judgment. Our function is to assess the legality of the promulgated marketing order and the statute which underlies it. In sum we find on this record that defendant's assertions of illegality have not been sustained.

The judgment should be affirmed.

HERLIHY, J. (dissenting). I do not question the right of the Legislature to enact laws which in its wisdom are found necessary and desirable. In my opinion there are serious questions as to the constitutionality of article 25 of the Agriculture and Markets Law, but in view of the findings hereinafter set forth, it is not necessary to reach that issue.

What the plaintiff seeks in this action is a declaration that New York State Apple Marketing Order F. V. 2 is "constitutional" and is in all respects legal and proper. In the opinion of Special Term it is noted that the defendant seeks a declaration that the order is unconstitutional, illegal and void.

It is necessary, in my opinion, to summarize certain factual situations pertinent to the issue:

(a) The petition was instituted by the Apple Market Order Development Committee which represented:

1. Western New York Apple Growers Association;

2. New York Members of the New York and New England Apple Institute.

(b) Following the approval of the proposed Marketing Order F. V. 2, the Commissioner contracted with the same petitioners to carry out the program.

(c) The Manager of the New York and New England Apple Institute received one half of his salary from the Market Order Fund.

(d) The promotional material, paid for by the Market Order Fund, urged the consumption of apples generally, in some instances reference being made to New York apples.

I find that the notice of the referendum conducted by the Commissioner was insufficient. Section 294 of the Agriculture and Markets Law provides that marketing orders are " subject to the approval of sixty-six and two-thirds per centum of the producers in the area affected participating in a referendum vote ". The Agriculture and Markets Law contains no directive in regard to the manner in which notice of such a referendum is to be given or how such a referendum is to be conducted.

In this case the Commissioner published an official notice of the referendum in 15 newspapers throughout the State, which newspapers were published in 14 counties. It further appears that unofficial notice was given by means of press releases through newspapers, radio and television and that there was an official notice posted in all county courthouses. Mr. Duncan testified for the Commissioner as the Director of the Division of Marketing in 1959. He testified that at the time of this referendum apples were being grown in 58 counties in this State as shown in the 1958 agricultural census and that these were counties in each of which there were more than 500 apple trees. Prior to the referendum the witness did not contact the County Extension Agents in regard to the names of apple growers. This witness finally admitted that he could have obtained a list of growers, but that such a list would not have been complete. He also conceded that there were about 7,000 apple farms in this State in 1959. The substance of his testimony in regard to the notice given in May of 1959 is that there was no published list of apple growers available at that time and that the Department made no effort to give personal notice to the apple growers. It further appears that this order affected all of New York State geographically and that any individual who sold apples pro-

duced by him was affected by such order no matter whether he had one tree or several trees. The plaintiff states on this appeal "An apple tree is not so readily ascertainable when the area covered is the whole state."

In *Schroeder* v. *City of New York* (371 U. S. 208, 211) the court stated: "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'". Applying this general principle of notice, it appears that although the Commissioner made no attempt to give personal notice, personal notice would not be required as to this referendum because it covered such a broad geographical area and it appears that all of the individuals affected could not be ascertained. However, the question remains as to whether or not a legal notice published only in 14 counties is sufficient to give the growers a reasonable opportunity to vote.

It would seem apparent that a legal notice published in only 14 counties out of at least 58 counties affected is patently insufficient. Special Term found that such notice was "as good as was possible as a practical matter." (41 Misc 2d 749, 752.) The majority in this court find that such notice together with the posted notice, general publicity, and the direction to County Agricultural Agents to give notice to area growers were sufficient. As noted by the majority, the fact that only a small percentage of the acknowledged 7,000 growers participated does not mandate a finding that the notice was insufficient. However, the fact that only about 10% of the known eligibles participated is entitled to some consideration in passing on the sufficiency of the notice given.

All growers are not presumed to be sophisticated. We are dealing primarily with farmers and at least to a great extent, rural areas. The publication of a legal notice in the official county newspapers would have at least met the requirements in regard to local and State-wide elections. (See County Law, § 101; Village Law, §§ 3-304, 3-314, 4-428; Town Law, § 82; Election Law, § 77.) The publication of legal notices in official newspapers in the area affected by proposed changes where referendums are required seems to be a State-wide custom established by the Legislature in regard to counties, villages, towns and State.

In this case the matter subject to the referendum affected the entire State of New York or 62 counties. There was no proof

introduced to show that the legal notice of the referendum was published in each county, nor that the newspapers in which the notice was published had circulation in all of these counties. The New York City area was apparently deemed by the Commissioner not entitled to legal notice even though the order on its face affects all of New York State and would apply where an individual had only one apple tree from which he sold apples.

The Commissioner has not shown on this appeal any facts indicating a necessity for departure from such custom and since he has placed the validity of this marketing order in issue, I find that the marketing order is void because of his failure to give sufficient legal notice of the referendum required by the statute. It is to be noted that this order not only affects a grower's pocketbook, but also has certain sanctions for disobedience. (Cf. Agriculture and Markets Law, § 40.)

An action was recently decided which concerned failure to comply with the rules here involved (*Matter of Wickham* v. *Schoenberg*, Albany County Special Term, June, 1966).

The majority note that the defendant made no denial nor produced any proof as to the failure to receive actual notice. The answer to that is that this is an action for declaratory judgment instituted by the Commissioner for a determination that the order be held constitutional. The burden is on the said Commissioner and not on the defendant. An examination of the exhibits, particularly the news media, makes it abundantly clear that the alleged notice, published as a news item, was not sufficient as to the time, the place or the manner of conducting the said election.

Assuming *arguendo*, but not conceding, that the notice was sufficient, I would hold the marketing order illegal and void for the reasons hereinafter set forth.

This regulation or order is a direct interference and imposition upon the free enterprise activity of producing and selling apples.

The question here considered is whether or not this order comes within the authority of the Commissioner as set forth in article 25 of the Agriculture and Markets Law.

In section 293 of this law, a marketing order is defined in subdivision (8) as follows: "An order issued by the commissioner pursuant to this article, prescribing rules and regulations governing the marketing for processing, the distributing, the sale of, or the handling in any manner of any agricultural commodity produced in this state during any specified period or periods."

Upon examination of the order involved herein it is apparent that this order provides for advertising, "apple marketing

and/or product research ", and the obtaining of information and dissemination of the same. (See 1 NYCRR 201.7, 201.8, 201.9.) In no respect does this order purport to govern any of the matters set forth in said subdivision (8) of section 293.

Admittedly, section 294 of this law provides in paragraph (d) of subdivision (2) that advertising and sales promotion expenses are to be included in the budget when required in an order, but since such matters are not included within the definition of a marketing order I conclude that they are authorized only as incidents of such an order. Accordingly, I find that the Commissioner has exceeded his authority under the statute and the subject order is null and void. (Cf. *Schulman* v. *People,* 10 N Y 2d 249.)

The legislative declaration found in section 292 of this law recites among other things that the marketing of agricultural commodities in excess of reasonable and normal market demands therefor and the inability of individual producers to develop new and larger markets for agricultural commodities, "result in an unreasonable and unnecessary *economic waste* of the agricultural wealth of this state. Such condition and the accompanying waste jeopardize the future continual production of adequate food supplies for the people of this and other states." (Emphasis added.)

Section 294 provides that the Commissioner may make and issue *marketing orders* after a hearing and referendum, but does not require any findings which must be made by the Commissioner prior to making such an order.

As a further comment on the validity of this order, it appears that the Commissioner in his decision before issuing the marketing order herein made various findings and conclusions but in none of these does it state that there was any jeopardizing of the future continual production of adequate supplies of food.

In his finding No. 6, he determines that other competing fruits have replaced apples with some of the consumers, which indicates that there is an ample supply of the necessary foodstuff.

Since such a jeopardy was a part of the legislative finding, it seems that the Commissioner would be required to make such a finding before issuing such an order and in the absence of such a finding the order would be arbitrary and capricious.

It seems conclusive from the present record that there is no exact proof as to what benefits, if any, have been realized from the advertising, there being no evidence of a depressed market, wasting of apples, nor any reasonable need for such order, the failure of which will " result in an unreasonable and unnecessary economic waste of the agricultural wealth of this state ".

It should be further emphasized that there is no similar interest, comparables or other legal basis for comparing the present proceedings to the milk control provisions of the law. To do so only unnecessarily complicates the issue. The present order is not regulatory in the usual sense since it does not attempt to regulate the market or prices. In sum, the present order is a requirement for compulsory advertising, the need, the necessity or the effect of which cannot be discerned in the present record.

The Legislature could never have intended that the present statute should permit rules and regulations to be promulgated to effect the present results. It is succinctly stated in *Matter of Meyer* (209 N. Y. 386, 389): "The legislative intention, if expressed, is the law itself. It is always presumed, in regard to a statute, that no unjust or unreasonable result was intended by the legislature. * * * Where a particular application of a statute in accordance with its apparent intention will occasion great inconvenience or produce inequality or injustice, another and more reasonable interpretation is to be sought."

This language is likewise applicable to rules and regulations enacted as a result of the statute. (See *Matter of Chatlos* v. *McGoldrick*, 302 N. Y. 380.)

In balance, the statute itself being of recent origin (1957), in view of the inadequacy of the notice, the failure of the order to comply with subdivision (8) of section 293 of the Agriculture and Markets Law and for the other reasons set forth herein the action of the Commissioner was arbitrary and capricious and the judgment should be reversed on the law and the facts, the New York State Apple Marketing Order F. V. 2 be determined void, and the defendant have judgment accordingly.

Gibson, P. J., Reynolds and Aulisi, JJ., concur with Taylor, J.; Herlihy, J., dissents and votes to reverse, in an opinion.

Judgment affirmed, without costs.