REQUESTED BY: Senator Robert L. Clark Nebraska State Legislature Unicameral, State Capitol Lincoln, Nebraska 68509
Dear Senator Clark:
In your letter to this office dated April 7, 1981, you requested our opinion as to the constitutionality of LB 11 and our opinion as to the constitutionality of current statutory `check-off' programs similar to LB 11. Under the policies of this office, we do not give our opinion as to the constitutionality of currently existing statutes. Therefore, our opinion expressed herein is directed towards LB 11 and not towards currently existing portions of the Nebraska Revised Statutes. Furthermore, while we understand that LB 11 has incurred several amendments during this session of the Legislature, our opinion as to the constitutionality of LB 11 is directed towards the original form of the bill as requested in your letter.
LB 11, the Grain Sorghum Resources Act, would establish the Grain Sorghum Development, Utilization and Marketing Board which would have various responsibilities involved with development and participation in programs of research, education, market development and promotion for grain sorghum. The bill provides for the composition and duties of the board and contains definitional sections defining `grower,' `first purchaser' and other relevant terms. Under LB 11, the Grain Sorghum Development, Utilization and Marketing Board will receive a fee of not to exceed one cent per hundred weight upon all grain sorghum sold through commercial channels in the State of Nebraska. The fee will be paid by the grower at the time of sale or delivery and will be collected by the first purchaser. The board may reduce this fee if it determines that revenues generated by the fee are providing more funds than are necessary to carry out the intent and purposes of the bill. The bill further provides for referendum procedures where, after a trial period of three years, sorghum growers in the state may choose to end the program or may choose to have an elected board as opposed to a board appointed by the Governor. Many of these election procedures would be administered by the Director of Agriculture. LB 11 is similar to current statutory programs involving wheat, soybeans, potatoes and other commodities.See, Neb.Rev.Stat. §§ 2-3301, et seq. (Reissue 1977).
Our research has disclosed no Nebraska Supreme Court cases dealing directly with the overall constitutionality of the type of program envisioned by LB 11. However, numerous courts in other states have considered commodities programs similar to that set forth in this bill. See, State ex rel.Graham v. Enking, 59 Idaho 321, 82 P.2d 649 (1938),Robison v. Dwyer, 58 Wn.2d 576, 364 P.2d 521 (1961),Wicklam v. Trapani, 246 N.Y.S.2d 137, 41 Misc.2d 749
(1964), Ralston Purina Co. v. Hagemeister, 188 N.W.2d 405
(N.D. 1971), State v. Vahlsing, 88 A.2d 144 (Me. 1952). In most of these cases from other jurisdictions, programs similar to LB 11 have been held to constitute a form of excise tax. Furthermore, in all the cases cited above, the programs involved have been upheld as constitutional. The various state courts have held that programs similar to that envisioned by LB 11 do not violate constitutional guarantees of due process or equal protection, that they do have an acceptable public purpose, and that they do not involve an impermissible delegation of legislative authority.
Our research has also disclosed some cases which have held programs similar to that set forth in LB 11 to be unconstitutional.See, Conlen Grain Mercantile, Inc. v.Texas Grain Sorghum Producers Board, 519 S.W.2d 620 (Tex. 1975), Conner v. Joe Hatton, Inc., 203 So.2d 154 (Fla. 1967). However, the facts involved in each of these cases can be distinguished from the situation which would exist under LB 11. The Conlen case involved a Texas constitutional provision which is not present in our Nebraska Constitution. In the Conner case, the commissioner who set fees under the commodity program was given unlimited discretion to determine the amount of those fees. Under LB 11, the Grain Sorghum Development, Utilization and Marketing Board is given specific guidelines for the amount of fees to be charged to growers. We also note the case of DukeshererFarms, Inc. v. Ball, 405 Mich. 1, 273 N.W.2d 877 (1979), in which the Supreme Court of Michigan held that a program similar to that contained in LB 11 levied an assessment rather than an excise tax. The Michigan court went on to hold that the assessment levied under the program was constitutional.
While there are no Nebraska Supreme Court cases directly considering the constitutionality of legislation similar to LB 11, our Supreme Court has indicated that excise taxes may be authorized by law. Licking v. Hayes LumberCo., 146 Neb. 240, 19 N.W.2d 148 (1945). If the fees charged under LB 11 are considered to be an excise tax, this case would seem to support the constitutionality of such a tax levy. Also, in general, our Supreme Court has indicated that the taxing power of the Legislature is without limit except as may be specifically proscribed by our Constitution itself. State v. Cheyenne County, 127 Neb. 619,256 N.W. 67 (1934).
We would also draw to your attention previous opinions of this office which indicated that legislation similar to LB 11 could be construed to encompass a proper public purpose and did not exceed the limitations of Article XIII, Section 3 of the State Constitution regarding extending the credit of the state. 1979-1980 Report of the Attorney General, No. 91 at 132, 1975-1976 Report of the AttorneyGeneral, No. 46 at 51.
Based upon the various authorities discussed above, it is our opinion that the general provisions of LB 11 establishing the Grain Sorghum Development, Utilization and Marketing Board are constitutional. It is also of our opinion that the board may legally charge the fees set forth in LB 11 in the manner directed by the bill. However, as discussed below, we have some question as to the validity of the referendum section of LB 11.
As you may be aware, the constitutional validity of the Nebraska Dry Bean Resources Act, an act similar to LB 11, was tested in the Lancaster County District Court in 1979.State ex rel. Douglas v. Stewart, Lancaster County District Court, Docket 329, P. 22. In that case, the district court found the Nebraska Dry Bean Resources Act unconstitutional primarily on the basis of the election provisions contained in the act. The act set forth general provisions similar to those found in LB 11 but made them operative only upon an affirmative referendum vote of dry bean growers. The court found that the election provisions of the Dry Bean Resources Act violated equal protection constraints, due process constraints, special legislation and special election constraints, and were void for statutory vagueness. A copy of the court's memorandum opinion, issued November 7, 1979, is attached to this letter for your information.
In addition to the decision by the Lancaster County District Court in the Stewart case, this office was requested to consider the validity of amendments to the Nebraska Dry Bean Resources Act which would allow the imposition of an excise fee on dry bean growers only upon an affirmative vote by a majority of the growers. We again stated that such election provisions would be constitutionally suspect under the rationale expressed in theStewart case. 1979-1980 Report of the Attorney General, No. 273 at 391.
The election referendum procedures set forth in LB 11 differ from those which were the focus of the opinion in theStewart case and those which were the focus of the opinion issued by this office in that the operation of LB 11 is not conditioned upon an affirmative special referendum of sorghum growers. Under the Nebraska Dry Bean Resources Act, the whole act itself was conditioned upon an affirmative election by the bean growers. The fact that the elections under LB 11 do not make the legislation itself operative would cure some of the problems faced by the court in theStewart case. However, in the Stewart case, the court found that the definition of growers entitled to vote in the election was unconstitutionally vague. That definition is nearly identical to the definition of grower set forth in LB 11. Furthermore, the court in the Stewart case stated that the special referendum election under the act constituted special legislation purporting to authorize the Department of Agriculture to conduct a special referendum in a fashion separate and apart from the general election law set out at Neb.Rev.Stat. §§ 32-101, et seq. (Reissue 1978). The court noted that this type of special referendum was in violation of Article III, Section 18 of the Nebraska Constitution. It appears to us that this same argument could be made in reference to the special referendum procedures outlined in LB 11. On the basis of the above, it seems that the special referendum procedures set forth in LB 11 could well be constitutionally suspect under the rationale of theStewart case and under the rationale of our opinion issued in 1980.
In summary, it is our opinion that the general provisions of LB 11 relating to the establishment of the Grain Sorghum Development, Utilization and Marketing Board and relating to fees to be charged to sorghum growers are constitutional. However, we feel that those provisions of LB 11 relating to a special referendum of sorghum growers could well be constitutionally suspect.
Sincerely yours, PAUL L. DOUGLAS Attorney General Dale A. Comer Assistant Attorney General