J. ROGER BARBER, as Commissioner of Agriculture and Markets of the State of New York, Respondent, v T. DAVID BULLARD, as President of Bullard Orchards, Inc., et al., Appellants.

Third Department, June 2, 1983

APPEARANCES OF COUNSEL

*Norman Kellar* (*Bernard Evans Harvith* of counsel), for appellants.

*Thomas G. Conway* (*Charles J. Yanni* of counsel), for respondent.

OPINION OF THE COURT

KANE, J.

Once again we must consider an attack upon the constitutionality of the Apple Marketing Order (AMO) and the

statutory provisions which provide for its implementation (1 NYCRR Part 201; Agriculture and Markets Law, §§ 292, 294). This court has examined these provisions on prior occasions. The history, purpose and validity thereof are reported in *Wickham v Trapani* (41 Misc 2d 749, affd 26 AD2d 216) and *Barber v Dembroski* (70 AD2d 745, affd 54 NY2d 648). In this action, defendants resist attempts to collect assessments required under the terms of the AMO as a violation of their rights under the First Amendment of the United States Constitution and section 8 of article I of the New York Constitution, the commerce clause (art I, § 8, cl 3) of the United States Constitution, and the import-export clause (art I, § 10, cl 2) of the United States Constitution. Since there is some doubt whether these specific contentions were considered by this court on a prior occasion (*Barber v Dembroski, supra*), we now hold these constitutional arguments to be without merit.

■ Considering them in reverse order, it is clear the import-export clause of the United States Constitution has no application to the AMO. First, the order imposes an assessment on New York growers in the form of a fund-raising measure incidental to the regulatory powers of the commissioner, and not a tax (*Wickham v Trapani, supra*). The assessment is not placed on apples in transit through New York State to another State, but only on local growers in a limited area of the State. We fail to perceive how the imposition of the AMO would impair the exclusive power of the Federal Government to all revenues from imports and duties on imports or impede the free flow of imports among the States or foreign countries (*Michelin Tire Corp. v Wages*, 423 US 276; *Kosydar v National Cash Register Co.*, 417 US 62, 70).

■ Nor do we find any violation of the commerce clause which would invalidate the AMO. This clause is violated when New York tax laws place a burden on goods coming into or passing through this State. In the matter before us, no such burden is imposed upon growers, shippers or packers from other States. It is, again, not a tax, but an assessment on domestic apple growers in New York State, the proceeds from which are used in furtherance of a legitimate government purpose (*American Mfg. Co. v St.*

*Louis,* 250 US 459; *Kull v Michigan State Apple Comm.,* 296 Mich 262; *State ex rel. Graham v Enking,* 59 Idaho 321).

Defendants' First Amendment argument is based upon a claim of being compelled by the State to associate with a specific group advancing particular beliefs contrary to their own philosophy, as well as being forced to contribute moneys in support thereof. There is no question but that the right to speak freely, or the right to refrain from speaking at all, is protected by the First Amendment (*Board of Educ. v Barnette,* 319 US 624, 633) as is the freedom of an individual to associate or refuse to associate with any group for the purpose of advancing a particular belief (*Abood v Detroit Bd. of Educ.,* 431 US 209, 233). The test to be applied to determine whether the State is trespassing upon First Amendment and Fourteenth Amendment rights is articulated by the Supreme Court of the United States in *Wooley v Maynard* (430 US 705), the New Hampshire license plate case. In order for State action to pass constitutional muster in this area, certain factors must be considered: (1) is there a sufficiently compelling State interest or purpose; and (2) is the means used to achieve that purpose the least drastic alternative. Moreover, if it is determined that the message to be conveyed is not ideologically neutral and the State is attempting to communicate an official view, the interest of the State cannot outweigh the individual's First Amendment right to avoid being a courier of that message (*supra,* at p 717).

■ Applying the above criteria to the matter at hand, it is clear no First Amendment infringement has occurred. New York State has an important governmental interest in protecting its economy and the apple crop is a significant portion of that economy (*Wickham v Trapani, supra*). The required assessment is used for one specific purpose and the alternatives suggested by defendants, i.e., voluntary contributions or levying a specific tax, are hardly less drastic alternatives, nor would they, in fact, accomplish the required purpose. Moreover, the promotion of the consumption of apples is not, in our view, the type of ideological message that rises to the level of an attempt to communicate an official view. It is, in the final analysis, a com-

mercial undertaking, without any political or social ideological overtones. There is no requirement that individual growers place advertising material on their containers and they are free to disclaim any association with the advertisement. When the facts presented are analyzed in accordance with criteria established by the Supreme Court in cases dealing with compulsion of speech and association, or purely commercial speech, there has been no violation of defendants' First Amendment rights (*Metromedia, Inc. v San Diego,* 453 US 490, 507; *Pruneyard Shopping Center v Robins,* 447 US 74, 87).

The order should be affirmed, without costs.

SWEENEY, J. P., CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Order affirmed, without costs.