*303 OPINION OF THE COURT
Carmen Beauchamp Ciparick, J.
Defendants Orridge, Matthews, Shephard, Gibbs, La Touche, Lee, Groves, Brown, Wardally, Davis, Parkam, Young, Wells and Walker (tenant defendants) and codefendant E. Thomas Williams (Williams) move for an order, pursuant to CPLR 3211 (a) (7), dismissing the complaint for failure to state a cause of action. Plaintiffs Delano Village Companies and its principals Bernard Axelrod and Carlin Axelrod (Delano) move by separate motion for an order pursuant to CPLR 3042 vacating tenant defendants’ demand for a bill of particulars, dated July 26, 1989, and further for an order pursuant to CPLR 6301 granting them injunctive relief against the defendants.
Plaintiffs, owners of the Delano Village (the Complex) located between 139th and 143rd Streets, New York, New York, have brought this action against tenant defendants, members of the board of directors of the Complex’s tenants’ association and Williams, a businessman and real estate developer, alleging, inter alia, that they have conspired and participated in a discriminatory plan to force the sale of the Complex from the plaintiffs to Williams by use of coercion and harassment toward them and potential white purchasers.
This action evolves from plaintiffs’ attempt to sell the Complex to the highest bidder on terms calling for an all-cash purchase and providing for the retirement of the existing mortgage on the premises.
In 1988, plaintiffs solicited bids for the sale of the Complex. Defendant Williams submitted his bid of $37.5 million, but prior to executing a purchase agreement reduced his offer to $36.5 million and sought to modify certain terms of the sale. Plaintiffs refused and began negotiations for the sale of the Complex with another potential purchaser, the Harley Development Corporation, owned by two individuals, Steven Finkelstein and Stuart Morgan (Finkelstein), and received a bid for $38.5 million. Plaintiffs accepted and entered into an agreement of purchase. Tenant defendants allege that prior to these events they allegedly submitted a bid to purchase the Complex for $38 million.
Apparently, tenant defendants felt Finkelstein would purchase the Complex and sell it at a profit or privately convert it to a cooperative. They feared that such a conversion plan would be at their detriment because of the high cost in *304 purchasing shares in a private conversion plan. Tenant defendants allegedly fearing the loss of their residences organized to work toward a tenant-sponsored conversion with the financial assistance of defendant Williams.
Plaintiffs allege that Williams, unhappy that his bid was not accepted, conceived with the tenant defendants, all of whom are black, to initiate a campaign of harassment and intimidation in order to prevent the sale of the Complex to Finkelstein and to coerce plaintiffs to sell the Complex to Williams.
To attain this goal plaintiffs allege that the defendants conspired to, urged and caused numerous tenants and others to send threatening letters- to Finkelstein, as well as phoning anonymous bomb threats to both the purchaser and plaintiffs. It is maintained that because of these tactics Finkelstein exercised its right under the purchase agreement to cancel its option of buying the Complex.
Subsequently, Orridge sent out a newsletter to the tenants of the Complex reporting Finkelstein’s withdrawal from the purchase of the Complex. The newsletter stated in pertinent part: "It was announced that * * * Finkelstein * * * had dropped out as a buyer. That was indeed a victory for us * * *. We do not know [plaintiffs’] intentions. We do know that Houlihan and Parness * * * that have ravaged buildings on Grand Concourse * * * have expressed interest with intention to buy and sell at a profit. They have been informed that they are not welcomed. * * * [A] Hasidic Jewish realty company is a very real possibility. Reflections on Crown Heights and Williamsburg in Brooklyn suggests that relations between blacks and the Hasidic population is far from good.”
Thereafter, Houlihan and Parness expressed an interest in the Complex but withdrew after receiving alleged threatening letters from the tenant defendants. The alleged threatening letter reads in pertinent parts the following:
"It has been invited to attention your interest in, and intention to purchase Delano Village Complex. Please be advised that the buildings are spoken for and that we do not appreciate or welcome prospective buyers. We the tenants of Delano Village have an agenda, which is this * * *.
"We are 1800 black families involved in the struggle for the establishment of our own economic base. Our economic liberation can be a reality only through black ownership of enter-prize [sic], assets and property in the black community. We are of the persuasion that not only we can and should decide *305 and determine our destiny. We cannot participate in self help or realize economic freedom if we continue to be enslaved by white entrepreneur, black consumer, white landlord, black tenant type relationships. Non black owners of property, enterprise and assets in the black community are not in our best interest.
"In that regard we are enlisting your cooperation and request that you honor and respect our view and refrain from further transactions to purchase Delano Village. We will take very unkindly to entrepreneurs that choose to violate our position and favor their personal interests and proceeds over our principle of ownership where we live” (hereinafter the Letters).
Plaintiffs next contend that the defendants conspired and urged several tenants, of the Complex to go on a rent strike for the purpose of scaring away all potential white purchasers and to coerce plaintiffs to sell the Complex to Williams. This action then ensued. Plaintiffs have also commenced approximately 440 separate nonpayment proceedings in the New York City Housing Court with regard to the rent strike (the Rent Strike).
The complaint sets out four causes of action: (1) unlawful discrimination in violation of 42 USC §§ 1981, 1982, 1985, 1988 (Civil Rights Act), 3604 and 3617 (Federal Fair Housing Act), and Executive Law § 296 (Human Rights Law); (2) personal injury as a result of the above alleged acts; (3) tortious interference with business relations; and (4) unlawful interference with plaintiffs’ business in violation of the New York Donnelly Act (General Business Law § 340). Plaintiffs seek permanent injunctive relief and monetary and punitive damages. Defendants now move to dismiss the complaint.
In accordance with the following decision that branch of defendant Williams’ motion for an order dismissing the complaint for failure to acquire personal jurisdiction over him pursuant to CPLR 3211 (a) (8) and plaintiffs’ motion for an order pursuant to CPLR 3042 vacating the demand for a bill of particulars are denied as moot. The first cause of action alleges that defendants have violated plaintiffs’ civil rights under 42 USC §§ 1981, 1982, 1985 and 1988 (attorneys’ fees), 3601 and 3617 (Fair Housing Act), as well as Executive Law § 296 (Human Rights Act).
42 USC § 1981 forbids racially discriminatory interference with the right to contract; 42 USC § 1982 forbids racially *306 discriminatory interference with the right to sell property; and 42 USC § 1985 forbids conspiracies to do either. It has been held by the United States Supreme Court that 42 USC § 1981 is applicable to actions regardless of whether the racial discrimination is against whites or nonwhites (see, McDonald v Sante Fe Trail Transp. Co., 427 US 273). The same applies with equal force to claims under sections 1982 and 1985, to protect the property rights and create a cause of action for injuries due to a conspiracy motivated by racial or other invidious discrimination.
The Fair Housing Act makes it unlawful "[t]o refuse to sell or rent * * * or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex or national origin” (42 USC § 3604 [a]). In this instance, the Complex is subject to the provisions of the Fair Housing Act pursuant to section 3603 (a) (2). As provided therein, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of * * * any rights granted or protected by section * * * 3604” (see, 42 USC § 3617).
The application of the Fair Housing Act to the instant action may be had where it is shown that the defendants herein, including Williams, have interfered, coerced or intimidated, or attempt to do the same, the plaintiffs as owners and sellers into racially discriminating in the sale of their property (42 USC § 3617). Moreover, 42 USC § 3617 can be violated absent violation of sections 3603 and 3604 (see, Stackhouse v DeSitter, 620 F Supp 208 [ND Ill 1985]).
The same holds true under the Human Rights Act § 296 (6) (see also, § 296 [5]), regardless whether the violator is a seller, landlord, or broker (cf., National Org. for Women v State Div. of Human Rights, 34 NY2d 416, 421). Section 296 (6) provides in pertinent part: "It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any act of the acts forbidden under * * * [section 296] or to attempt to do so. ” (Emphasis added.)
The predominant purpose of the Human Rights Act is the elimination of discrimination (Koerner v State of New York, 62 NY2d 442, 448; see, Executive Law § 290 [3]) and the court’s duty is to reasonably interpret it to achieve that purpose. It is illegal for a racial group to try to coerce an owner of property into selling only to a particular race (cf., Matter of Young, 29 Misc 2d 817).
*307 The allegation that the tenant defendants and Williams initiated a campaign of harassment and intimidation to prevent the sale to Finkelstein in an attempt to coerce plaintiffs to sell the Complex to Williams as a result of these acts Finkelstein canceled its contract to purchase the Complex is not supported by the record.
Defendants submit a copy of an article written in the weekly newspaper The City Sun dated August 2-8, 1989, entitled Harlem: Landlord Sues Tenants, Charges Reverse Racism. In this article Steven Finkelstein, principal of Finkelstein, is quoted with the following response with regard to the allegations that the decision to withdraw from the purchase of the Complex was caused by threatening letters and anonymous bomb threats, he states the following: “That is totally inaccurate. I don’t even know where that came from * * *. We were interested in buying [the Complex] at one time but we decided against it. It had nothing to do with the tenants. We couldn’t purchase the land under the [Complex] * * *. That was the end of it.” Moreover, the anonymous bomb threats allegedly made to the plaintiffs and Finkelstein cannot be attributed to the defendants herein (cf., 117 E. 24th St. Assocs. v Karr, 95 AD2d 735).
The first cause of action further alleges that because of defendants’ campaign of harassment and intimidation and to take illegal action to go on a rent strike they willfully conspired and attempted to compel and coerce plaintiffs to discriminate against whites in favor of blacks in the making of contracts and in the purchase and sale of the property in violation of the aforementioned Federal and State statutes. Plaintiffs seek injunctive relief as the remedy for this cause of action.
Defendants argue, inter alia, that their activities, i.e., newsletter to tenants, letters to potential purchasers, and the commencement of the rent strike are all lawful and are protected activities that involve the dissemination of an idea, expression, thought or opinion. Accordingly, these activities cannot constitute harassment, intimidation, or illegal action prohibited under either Federal or State laws.
Considerations of a more compelling force require the dismissal of plaintiffs’ complaint. A fair reading of the allegations of the complaint herein makes it clear that the statutes asserted to have been violated, i.e., the Civil Rights Law, the Fair Housing Act, and the New York Human Rights Act, are *308 inextricably bound up with defendants’ exercise of their First and Fourteenth Amendment rights of assembly, petition, association (cf., Weiss v Willow Tree Civic Assn., 467 F Supp 803, 816 [SD NY 1979]), and speech (Matter of Holland v Dillon, 140 Misc 2d 667). The guarantee of freedom of expression set forth in our State Constitution is of no lesser validity than that set forth in the Federal Constitution and may even afford greater protection (NY Const, art I, §§ 8, 9; US Const 1st Amend; SHAD Alliance v Smith Haven Mall, 106 AD2d 189, revd 66 NY2d 496). For example, recently the New York Court of Appeals struck down New York’s criminal harassment statute (Penal Law § 240.25) as overbroad, holding that "its continued existence presents a significant risk of prosecution for the mere exercise of free speech” (People v Dietze, 75 NY2d 47, 50). In Dietze the defendant was convicted and sentenced to 15 days in jail or a $50 fine for heckling a mentally retarded woman and her son on a public street in the Town of Norfolk. Dietze was found guilty of calling the woman a " 'bitch’ ”, calling her son a " 'dog’ ”, and of saying she would " 'beat the crap out of you some day or night on the street’ ”. (Supra, at 50.) Finding that the New York Constitution provided an independent basis for their holding the court reversed the conviction. Although the defendant’s comments clearly fell within the facial scope of the statute it did not fall within the scope of constitutionally proscribed expression. Unless speech presents a clear and present danger of some serious substantive evil, it may neither be forbidden nor penalized (People v Dietze, supra).
The allegations as pleaded by the plaintiffs reveal defendants’ concerted effort to assert by speech and publication their views against the potential purchase of the Complex by a white purchaser, although these verbal and written statements can be characterized as unpleasant sharp attacks concerning race (cf., Brandenburg v Ohio, 395 US 444), defendants have not asserted violence, threats, physical intimidation, libel, slander, fighting words, perjury, fraud, bribery or any misrepresentation of law or facts (Gertz v Robert Welch, Inc., 418 US 323; California Transp. v Trucking Unlimited, 404 US 508; Brandenburg v Ohio, supra; Cox v Louisiana, 379 US 559, reh denied 380 US 926; Roth v United States, 354 US 476, reh denied 355 US 852; Chaplinsky v New Hampshire, 315 US 568). Speech may not be restricted because of its content (People ex rel. Arcara v Cloud Books, 101 AD2d 163, lv *309 granted 103 AD2d 1049, mod 65 NY2d 324, cert granted 474 US 978, revd 478 US 697, on remand 68 NY2d 553).
The court cannot accept plaintiffs’ argument that defendants’ acts of sending letters to potential purchasers, newsletters to tenants of the Complex and the commencement of the rent strike are not constitutionally protected activities because they are motivated to coerce, harass and intimidate plaintiffs and others. "The protection of the First [and Fourteenth] Amendment does not depend on 'motivation’; it depends on the nature of defendants’ conduct” (Weiss v Willow Tree Civic Assn., supra, at 817). The activities described in the complaint fall squarely under the protection of the First and Fourteenth Amendments’ guarantees of citizens’ rights to freedom of expression, assembly and to petition the Government for redress of grievances, i.e., the rent strike for alleged housing violations.
Moreover, to characterize defendants’ actions a "conspiracy” as articulated in plaintiffs’ first and fourth causes of action (42 USC § 1985; see also, General Business Law § 340 [1] [Donnelly Act], respectively), where the only allegations are those discussed does not bar the defendants from asserting the aforementioned constitutional guarantees. Defendants have a right, however unpalatable the ideas or whatever the underlying motive (e.g., Brandenburg v Ohio, supra [advocacy of white supremacy]), to band together for the advancement of beliefs and ideas.
Accordingly, the allegations attributed to the defendants in plaintiffs’ complaint and upon which plaintiffs predicate their claims under Federal and State statutes are constitutionally protected activities; these allegations cannot constitute a basis for liability under the above statutes lest the defendants be penalized for exercising their constitutional rights. The court is mindful of the fact that rights of expression and association are at the heart of a free and democratic society and the right to speak freely, or the right to refrain from speaking at all is protected as is the freedom to associate or refuse to associate with any group for the purpose of advancing a particular belief (Barber v Bullard, 93 AD2d 672, affd 61 NY2d 631). Therefore, public intolerance, animosity or unrest does not justify prohibition of free speech, assembly and association (cf., Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld, 91 AD2d 190, lv denied 63 NY2d 603). Accordingly, that branch of defendants’ motions for an order dismiss *310 ing the first and second causes of action pursuant to CPLR 3211 (a) (7) is granted.
In accordance with the above, plaintiffs’ motion for an order granting them injunctive relief pursuant to CPLR 6301 is denied (Grant Co. v Srogi, 52 NY2d 496, limited by 423 S. Salina St. v City of Syracuse, 68 NY2d 474, cert denied 481 US 1008).
The third cause of action alleges that defendants’ acts constitute tortious interference with plaintiffs’ business relations. Tortious interference with business relations occurs when defendants use unlawful means to disrupt plaintiffs’ business, resulting in injury (Della Pietra v State of New York, 125 AD2d 936, 938, affd 71 NY2d 792).
In the circumstances presented this cause of action is unavailable. In light of Finkelstein’s quoted statement concerning the reason for its withdrawal from the purchase of the Complex and this court’s finding that defendants’ actions are constitutionally protected they cannot, as a matter of law, be considered "unlawful means to disrupt” plaintiffs’ business relations. To do so, as discussed supra, would stifle free speech, assembly and association. Accordingly, that branch of the defendants’ motions for an order dismissing the third cause of action pursuant to CPLR 3211 (a) (7) is granted.
The fourth cause of action alleges that defendants’ actions constitute a violation of General Business Law § 340 (1) (Donnelly Act), which provides in relevant part: "Every * * * arrangement whereby * * * [competition or the free exercise of any activity in the conduct of any business, trade or commerce * * * is or may be restrained * * * is hereby declared to be against public policy, illegal and void.”
However, in accordance with the findings of the court with regard to the first, second and third causes of action, this cause of action also fails to state a claim as a matter of law. The alleged arrangement (conspiracy) although it may fall within the scope of the statute does not fall outside the protection of constitutionally protected activity (People v Dietze, supra). Accordingly, that branch of the defendants’ motion seeking an order dismissing the fourth cause of action pursuant to CPLR 3211 (a) (7) is granted.
The court is well aware of the housing situation in New York City. The limited availability of Federal funds, the high cost of housing, and owner abandonment have led to a shortage of affordable housing in the city. A 1988 study conducted *311 on the behalf of the city’s Department of Housing Preservation and Development indicates that from 1984-1987, a total of 43,503 housing units, or an average of 14,501 per year, were converted to cooperative or condominium ownership of which 45% of this total was located in Manhattan. Further, that the ability of the low- and moderate-income tenant to purchase a cooperative or condominium has become more difficult (see, Stegman, 1987 Housing and Vacancy Report: New York City [Dept of Hous Preservation & Dev, Apr. 1988]). Therefore, it is understandable why the tenants in this action have organized to achieve their goal in obtaining affordable housing. Their method of achieving this goal, which the court does not condone, involves the exercise of assembly and speech, and although this method may be characterized as derisive or provocative, it is still protected under the State and Federal constitutional guarantees of free expression unless it is more than that (see, Lewis v City of New Orleans, 415 US 130, 133-134). The foregoing does not preclude any future action based upon future acts which would give rise to a cognizable cause of action. The complaint is hereby dismissed.